SALVADOR VIZCARRA CASTELLÓN, peticionario y recurrente, *v.* EL PUEBLO DE PUERTO RICO, demandado y recurrido.

Número: R-64-131    Resuelto: 26 de marzo de 1965

*Sarah Torres Peralta* y *Jaime Escanellas,* abogados del peticionario; *J. B. Fernández Badillo, Procurador General,* y *Manuel Tirado Viera, Procurador General Auxiliar,* abogados del demandado.

Sala integrada por el Juez Presidente Interino Señor Pérez Pimentel y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

En 23 de octubre de 1963 se presentó una denuncia contra el recurrente, Salvador Vizcarra, Jr., en el Tribunal de Distrito, Sala de Río Piedras, por infringir el Art. 368 del Código Penal (33 L.P.R.A. sec. 1439),(¹) consistente en

---

(¹) El Art. 368 del Código Penal dispone que:

"Toda persona que maliciosa y voluntariamente perturbare la paz o tranquilidad de algún vecindario o individuo, con fuertes o inusitados gritos, conducta tumultuosa y ofensiva, o amenazas, vituperios, riñas, desafíos o provocaciones, o que en las calles de alguna ciudad o pueblo, o en las vías públicas disparare algún arma de fuego, o hiciere uso de lenguaje grosero, profano o indecoroso en presencia o al alcance del oído de mujeres o niños, en forma estrepitosa o inconveniente, incurrirá en delito menos grave y será castigada con multa máxima de doscientos dólares, o cárcel por un término máximo de noventa días o ambas penas, a discreción del tribunal."

que el 17 de dicho mes y año, en la residencia Núm. 1112 de la Calle 17 de Villa Nevarez, Puerto Rico, "alteró la paz y tranquilidad de las personas que allí se encontraban y muy en particular de la familia del Sr. Federico Henriquez Nuñez, con un fuerte escándalo que formó y mientras en una actitud colérica e insultante a través de la línea telefónica le dirigió las siguientes frases obscenas . . . y otras más por el estilo, las cuales en ese momento pudo grabar el perjudicado en una grabadora que tenía funcionando y la cual podría presentarse como materia de evidencia si así lo dispone el tribunal". El policía Francisco Silva fue el denunciante. Se designaron tres testigos en la denuncia, uno de los cuales era Nidza Henriquez Goytía.

Al ser llamado el caso para juicio, solicitó el recurrente la desestimación de la denuncia por dos fundamentos, o sea, (1) porque en la determinación de causa probable se tomó en consideración la declaración de la testigo Nidza Henriquez Goytía, esposa del recurrente, y (2) porque la denuncia no aducía hechos constitutivos de delito alguno.

Denegada dicha moción, se permitió la radicación, en 10 de enero de 1964, en el referido Tribunal de Distrito, Sala de Río Piedras, de una nueva acusación suscrita por el perjudicado Federico Henriquez, la cual lee así:

"El referido acusado a eso de las doce de la noche del día 16 y la una de la mañana del día 17 de octubre del mil novecientos sesentitrés, voluntaria y maliciosamente, con el propósito de vejar, vituperar y violentar la paz del denunciante, en actitud colérica e insultante a través de la línea telefónica le dirigió los siguientes vituperios y amenazas que perturbaron hondamente la paz del denunciante, a saber: . . . [frases denigrantes, difamatorias, vergonzosas y escandalosas].

"Que dichas palabras vejantes y vituperantes fueron escuchadas por el teléfono de su residencia en el No. 1112 de la Calle No. 17 de la Urbanización Nevarez, en el Municipio de Río Piedras, P.R., por el denunciante y su esposa quien allí estaba presente por teléfono al contestar el denunciante una llamada telefónica del acusado, y la conversación fue grabada por graba-

dora eléctrica y la grabación se pondrá a la disposición del Tribunal como evidencia en el caso si el Tribunal lo requiriere".

Solicitado por el recurrente un recurso de *certiorari* ante el Tribunal Superior, Sala de San Juan, por distintos fundamentos, éste fue denegado en 13 de marzo de 1964. En 10 de abril de ese mismo año, radicó el recurrente ante nos el recurso de revisión que nos ocupa y en apoyo del mismo apunta la comisión por el Tribunal Superior de tres errores que consideramos a continuación y que a nuestro juicio no se han cometido, por lo que procede denegar el recurso.

1.—"Se cometió error al permitir una supuesta enmienda de una denuncia, que en realidad no es enmienda sino que constituye una nueva denuncia, pasado ya el término de 60 días desde el 25 de octubre de 1963, fecha en que el acusado estuvo 'held to answer,' ".

En apoyo de este apuntamiento se arguye que la denuncia subsiguiente suscrita por el perjudicado Federico Henriquez es una nueva denuncia y no una enmienda de la primera ya que ésta no era susceptible de enmienda y que, por lo tanto, la segunda no se radicó dentro del término de 60 días del arresto o citación del peticionario, como lo exige la Regla Núm. 64(n)(2) de las Reglas de Procedimiento Criminal.[2] *Gallant* v. *Tribunal Superior*, 88 D.P.R. 515 (1963); *Pérez de Látimer* v. *Tribunal Superior*, 87 D.P.R. 818 (1963); *Martínez* v. *Tribunal Superior*, 81 D.P.R. 945 (1960); *Pueblo* v. *Tribunal Superior, María Figueroa, Interventora*, 81 D.P.R. 455 (1959).

No es necesario resolver si la segunda acusación es o no es una enmienda de la primera toda vez que el peticionario no ha podido establecer, ni aparece constancia en el récord, si en efecto fue arrestado o citado cuando se radicó la primera

---

[2] La Regla Núm. 64 (34 L.P.R.A. Ap. I R. 64(n)(2)) sobre Fundamentos de la Moción para Desestimar, dispone que:

". . . no se presentó acusación o denuncia contra el acusado dentro de los sesenta días de su arresto o citación".

160

acusación para responder del delito a que dicha acusación se contrae. Del récord ante nos resulta imposible determinar si el referido término de 60 días ha expirado. Por el contrario, el propio peticionario en su petición en este recurso admite que no fue citado para la determinación de causa probable en relación con la primera denuncia y en su solicitud de *certiorari* radicado en este caso ante el Tribunal Superior admite que dicha denuncia le fue notificada el 19 de diciembre de 1963 y el juicio señalado para el 3 de enero de 1964. De manera que a base de la referida citación, y en ausencia de prueba de que fuera arrestado allá para cuando se radicó la primera denuncia, el término de 60 días en cuestión no había transcurrido. Esta conclusión no prejuzga que el planteamiento en cuestión se levante en ocasión oportuna ante la sección y Sala competente del Tribunal de Primera Instancia, previa la corrección y complementación de los autos originales como dispusimos en nuestra resolución de 27 de noviembre de 1964 en este caso.

■  Arguye, además, el peticionario que procede la desestimación de la segunda denuncia debido a que "a la esquina superior derecha de la segunda denuncia expresa que la violación imputada es del art. 369 del Código Penal" y que "El texto de la segunda denuncia imputa hechos que no pueden en forma alguna constituir violación del art. 369 del Código Penal".

Carece de mérito esta imputación, pues se trata de una cita errónea que debe considerarse como un defecto de forma y no se ha demostrado cómo el mismo perjudica los derechos sustanciales del peticionario. Reglas Núms. 35 (d) y 36 de las Reglas de Procedimiento Criminal. (³)  (34 L.P.R.A. Ap. II.)

---

(³) La Regla Núm. 35 (d) lee así:
"La acusación y la denuncia deberán contener:
  (d) La cita de la ley, reglamento o disposición que se alegue han sido infringidos, pero la omisión de tal cita o una cita errónea se considerará como un defecto de forma."

2.—"Se cometió error al negarse a desestimar una denuncia, cuando en la causa probable, sin previa citación del presunto acusado, se utiliza la declaración de su esposa, quien no es perjudicada, ni tiene el consentimiento de su esposo para declarar contra él."

■ Se basa este apuntamiento en la doctrina que establecimos en *Pueblo* v. *Medina*, 32 D.P.R. 151 (1923), al efecto de que conforme a lo dispuesto en el inciso (1) del Art. 40 de la Ley de Evidencia (32 L.P.R.A. sec. 1734),[4] la esposa no puede declarar en una causa criminal (o civil) en contra del marido excepto cuando éste lo consiente o cuando se trate de acciones o procedimientos específicamente señalados en dicho estatuto.

Carece de mérito este apuntamiento por los siguientes fundamentos:

(1) La imputación se refiere a la primera acusación la cual o ha sido enmendada, o sustituida, por nueva acusación que sólo incluye como testigos al perjudicado Henriquez y a su esposa.

(2) La imputación de delito en la primera acusación indudablemente se sostiene con vista de las declaraciones del perjudicado Federico Henriquez y su esposa que oyeron los epítetos que por teléfono les dirigiera el recurrente y que motivaron las denuncias en este caso, y en ausencia de la declaración de la esposa del peticionario.

---

La Regla Núm. 36 dispone que:

"Una acusación o denuncia no será insuficiente, ni podrán ser afectados el juicio, la sentencia o cualquier otro procedimiento basados en dicha acusación o denuncia, por causa de algún defecto, imperfección u omisión de forma que no perjudicare los derechos sustanciales del acusado."

[4] El inciso (1) del Art. 40 de la Ley de Evidencia provee lo siguiente:

"No se podrá examinar una persona como testigo en los casos siguientes:

1.—Un marido no podrá ser examinado a favor ni en contra de su mujer, sin el consentimiento de ésta; ni una mujer a favor ni en contra de su marido, sin el consentimiento de éste . . . pero esta disposición no será aplicable a una acción o procedimiento civil por uno de los cónyuges contra el otro, ni a una acción o procedimiento criminal por un delito grave cometido por uno de ellos contra el otro."

(3) De todos modos procede la segunda acusación de acuerdo con la Regla Núm. 67 de las Reglas de Procedimiento Criminal([5]) (34 L.P.R.A. Ap. II R. 67), y la misma no adolece del alegado defecto. *Pérez de Látimer* v. *Tribunal Superior*, supra.

3.—"Se cometió error al resolver que el uso de lenguaje profano, ofensivo, grosero o indecoroso, mediante una llamada telefónica de un hombre a otro hombre constituye el delito de alteración a la paz que contempla el artículo 368 del Código Penal de Puerto Rico."

Sostiene el peticionario que en la primera denuncia no se imputa la violación del Art. 368 del Código Penal, pues al alegar que el peticionario profirió determinadas frases *obscenas* al perjudicado Henriquez en realidad se refería al "uso de lenguaje grosero, profano o indecoroso" a que se refiere dicha disposición del Código Penal y que en tal caso no se alegó, como lo requiere el estatuto, que el uso de tal lenguaje se hiciera *"en presencia o alcance del oído de mujeres o niños"* ni *"en forma estrepitosa o inconveniente"*; que se hizo por teléfono de manera que no podía haber la intención de perturbar la paz. Con respecto a la segunda denuncia nada apunta el peticionario en cuanto a su suficiencia, presumiblemente por considerar la denuncia improcedente por ser nueva denuncia radicada fuera de término. Ésta, sin embargo, está redactada en términos sustancialmente similares a la anterior excepto que en lugar de referirse a las frases proferidas por el peticionario como *obscenas*, las clasificó de *vituperios y amenazas* y que las que enumeró eran distintas de las que se relacionaron en la primera denuncia pero en igual grado oprobiosas y difamatorias.

---

([5]) La referida Regla 67 dispone que:

"Una resolución declarando con lugar una moción para desestimar no será impedimento para la iniciación de otro proceso por el mismo delito a menos que el defecto u objeción fuere insubsanable, o a menos que tratándose de un delito menos grave (*misdemeanor*) dicha moción fuere declarada con lugar por alguno de los fundamentos relacionados en la Regla 64(n)."

En apoyo de su argumentación, cita el caso de *Pueblo* v. *Ruiz*, 29 D.P.R. 74, 76 (1921), en el cual este Tribunal concluyó que no se cometió el delito de alteración a la paz (Art. 368 del Código Penal) al usarse un epíteto *grosero e indecoroso* contra un individuo en ausencia de alegación en la acusación, y de prueba, de que las frases se profirieron al alcance de los oídos de mujeres o niños en forma estrepitosa e inconveniente. Cita también a *Pueblo* v. *Kortright*, 70 D.P.R. 399, 401 (1949), en que resolvimos que el pronunciar la frase "esos policías y esta detective son unos abusadores y unos charlatanes [injuriosas].... 'en un tono alto, que lo oímos, un poco excitado, algo violento' no es suficiente, bajo todas las circunstancias de este caso, para que el delito de alterar la paz se considere cometido.", que de acuerdo con esta doctrina el proferirlas por teléfono no podría dar lugar a la comisión del delito en cuestión. Hace alusión a que en *Pueblo* v. *Ways*, 29 D.P.R. 334, 338 (1921), dijimos que: "Se ha insinuado que por más que la ley castiga la alteración de la paz de un individuo, siempre, para que exista el delito, es necesario el elemento público. Estamos conformes. Hemos visto que el artículo 368 forma parte del título que comprende los delitos contra la paz pública. La naturaleza de los diversos actos que abarca el indicado artículo y el espíritu general del mismo, así lo demanda. Pero tal elemento existe en el presente caso. La conducta del acusado para con el denunciante fue en público y expresamente se alega en la denuncia que la actuación del acusado dio lugar a la reunión de muchas personas. Esta circunstancia que ahora consideramos diferencia este caso del de *El Pueblo* v. *Ruiz*, decidido por esta Corte Suprema el 31 de enero del año actual, 29 D.P.R. 74. En él establecimos que el uso de lenguaje insultante por sí solo no constituye una alteración de la paz. No podíamos calificar el lenguaje usado como conducta ofensiva porque las circunstancias en que lo fue tendían a mitigar más bien que a agravar la forma de las palabras empleadas. Ellas eran la mera ex-

presión de una persona que llamada por el denunciante se sintió por él agraviada y fueron dichas tranquilamente. En el presente caso las palabras no sólo eran insultantes, sino que fueron dichas en tonos fuertes y atrajeron un número de personas."

En apoyo de su argumento de que en este caso no podía haber intención de alterar la paz pues el medio usado fue el teléfono, hace referencia el peticionario al caso de *People v. Monnier*, 19 N.E.2d 789 (N.Y. 1939), en que se dijo que:

"Aun asumiendo que este acusado llamó al testigo querellante por teléfono y le profirió ciertos epítetos obscenos que fueron oídos por la operadora, el acusado no es culpable de la ofensa de conducta desordenada . . . . Tal persona tiene que actuar o hablar ya sea con intención de provocar una alteración de la paz o en tal forma 'de manera que se ocasione una alteración de la paz'. En el caso bajo consideración no hay evidencia de la intención por parte del acusado de alterar la paz, ni son las circunstancias tales que pudieran dar lugar a una alteración. El medio usado, o sea, el teléfono, parece indicar una intención en contrario."

Comenzaremos por decir que constituye delito, de acuerdo con los términos del Art. 368 del Código Penal, el perturbar maliciosa y voluntariamente la paz o tranquilidad *de un individuo* con *conducta ofensiva*, así como con *vituperios*. A los efectos de esta modalidad del delito, no es necesario alegar en la acusación o denuncia, ni probar, que las frases fueron proferidas al "alcance de los oídos de mujeres o niños" ni que se hayan proferido "en forma estrepitosa o inconveniente". En *Ways*, supra, este Tribunal determinó que las imputaciones de "lambe ojo, fariseo y judas" constituían *conducta ofensiva*, así como *vituperios*. Con mayor razón debemos concluir que las frases usadas en la primera denuncia al efecto de "Tú eres un cabro, viejo cabrón, tu mujer te la pega y mi mujer vive con ustedes porque tú eres un cabro y otras más", así como las relacionadas en la segunda denuncia que hacen referencia difamatoria a la madre del perjudicado y lo tildan de cobarde e invertido, constituyen conducta ofensiva

y son claramente vituperios, según este término se usa en el referido estatuto, aun cuando se ha hecho referencia en la primera denuncia a las mismas en este caso como palabras obscenas. Pudiera ser que también constituya "lenguaje grosero, profano e indecoroso" de acuerdo con otra modalidad del estatuto pero como determinamos que constituyen *conducta ofensiva*, así como *vituperios*, repetimos, no es necesario alegar ni probar, que fueron proferidas al "alcance de los oídos de mujeres o niños, en forma estrepitosa o inconveniente".

En cuanto a la publicidad, si bien es cierto que en *Ways*, supra, este Tribunal dijo que estaba conforme que "para que exista el delito, es necesario el elemento público" no es menos cierto que en *Ramos* v. *Tribunal de Distrito*, 73 D.P.R. 417 (1952), atenuamos el rigor de esta doctrina al concluir que el atisbar a un matrimonio por una ventana mientras se disponían a dormir, constituía conducta ofensiva que perturbaba la paz y tranquilidad de uno o varios individuos. No puede decirse que un acto como el de atisbar por una ventana a dos personas cuando se van a retirar, en horas de la madrugada, goza del elemento de publicidad a que alude el peticionario y, sin embargo, concluimos en *Ramos*, supra, acertadamente a nuestro juicio, que la relación de tales hechos "en una denuncia son los que determinan el delito imputado" de alteración de la paz.

■ Nos resta por considerar si debemos aplicar en esta jurisdicción la doctrina del caso de *Monnier*, supra. Concluimos que no. Fundamentamos esta conclusión, en síntesis, en que en ese caso y otros que le siguen, se trata de un estatuto redactado en términos distintos al que está envuelto en este caso. En *Monnier*, supra, se trataba de un estatuto de Nueva York sobre conducta desordenada y bajo el mismo es esencial que la conducta sea con intención de promover o que ocasione una alteración de la paz. Ahora bien, en el Estado de Nueva York se define el delito de alteración de la paz como una perturbación del orden público por un acto de vio-

lencia o uno que probablemente la cause o que, al causar consternación y alarma, altera la paz y tranquilidad de la comunidad: el acto que se denuncie como conducta desordenada debe ser de carácter público y uno que tienda a perturbar la paz y tranquilidad pública. *People* v. *Chesnick*, 96 N.E.2d 87 (N.Y. 1950); *People* v. *Kovalchuk*, 68 N.Y.S.2d 165 (1947); *People* v. *Perry*, 193 N.E. 175 (N.Y. 1934). Es obvio, por lo tanto, que en esa jurisdicción el proferir palabras obscenas no constituye delito en ausencia de alegación y luego de prueba· de los elementos indicados constitutivos de alteración de la paz o de la posibilidad de que ésta ocurra. De ahí que se dijera en (a) *People* v. *Madnick*, ·208 N.Y.S.2d 392 (1960) que el llegar a un lugar donde se celebraba un juego de dados y actuar allí ruidosa y alborotosamente· no constituye conducta desordenada pues no se alegaron actos de carácter público o la manera en que se causó una alteración de la paz; (b) *People* v. *Ross*, 206 N.Y.S.2d 473 (1960), que el proferir palabras viles e insultantes a oficiales de la policía, en ausencia de prueba de que ese acto molestó o perturbó a otros, no constituye el delito de conducta desordenada; (c) *People* v. *Rothberg*, 167 N.Y.S.2d 813 (1957), el celebrar una fiesta en un apartamiento hasta altas horas de la noche en la cual se tocó música y se bailó y se hizo ruido, no constituyó conducta desordenada y sí una perturbación privada, la cual no es punible, en vista que los otros únicos residentes en el edificio eran los esposos denunciantes y sus hijos y no se estableció que hubo tal grado de conmoción y desorden que afectara la tranquilidad general de la comunidad o una parte sustancial de la misma; (d) *People* v. *Dalton*, 121 N.Y.S.2d 915 (1953), el uso de lenguaje obsceno dirigido a una mujer en el curso de entrar y remover una verja en propiedad privada, sin derecho a hacerlo, y cuando las palabras no fueron oídas por otras personas, tampoco constituye conducta desordenada. Véase, además, *People* v. *Richardson*, 104 N.Y.S.2d 336 (1951); *People* v. *Dale*, 47

N.Y.S.2d 702 (1944). Por el contrario, el Art. 368 del Código Penal, en su modalidad relativa a *conducta ofensiva y vituperios* no exige, ni que el acto sea visto o las palabras oídas por una o más personas en adición a las que fueron directamente afectadas o que dé lugar a tal conmoción y desorden que afecten la tranquilidad general de una parte sustancial de la comunidad. Las circunstancias en *Ramos*, supra, que dieron lugar a una convicción por el delito de alteración de la paz sostienen plenamente esta conclusión. Nuestra doctrina más bien se asemeja a la adoptada en el estado de Connecticut en donde se dijo, en *State* v. *Boyer*, 198 A.2d 222 (Conn. 1963), que el proferir lenguaje vil, abusivo e indecente por teléfono constituye una infracción del estatuto que incluye como una modalidad del delito de alteración de la paz el proferir lenguaje amenazador, abusivo e indecente a un individuo; que la instrumentalidad usada para cometer una alteración de la paz—el teléfono en este caso, al igual que en el caso que nos ocupa—no es un elemento o ingrediente necesario del delito; que bajo el estatuto en cuestión no es necesario que se demuestre ni la existencia de una alteración de la paz ni la intención de alterarla. Dijo el tribunal en este caso que "Cada individuo tiene derecho a la seguridad de su persona, a estar libre de ser molestado injustificadamente por otros, y a ser protegido por la ley contra la intrusión injustificada de su tranquilidad. Sobre estas bases descansa la existencia de una sociedad ordenada y civilizada". Se llegó a esta conclusión, no obstante que para la misma época de dicha decisión se legisló en Connecticut para definir como delito el hacer llamadas telefónicas ofensivas. Se concluyó que tal legislación no podía afectar la interpretación que el tribunal le diera al estatuto sobre alteración de la paz. Por último, el tribunal en dicho caso distinguió su opinión en *State* v. *Robinson*, 184 A.2d 188 (Conn. 1962), citado por el peticionario, al efecto de que el uso del lenguaje obsceno proferido a los testigos querellantes no constituyen conducta

desordenada porque bajo el estatuto que define este delito, un elemento necesario del mismo es que el acto ocurra en un lugar público y en *Robinson*, supra, la llamada telefónica se hizo de un hogar a otro. Por la misma razón es distinguible también el caso de *State* v. *Gist*, 116 S.E.2d 856 (So. Car. 1960).

*En vista de lo expuesto, se confirmará la sentencia dictada en este caso por el Tribunal Superior, Sala de San Juan, en 13 de marzo de 1964.*