PUERTO RICO TELEPHONE CO., peticionaria, *v.* CIELO MARTÍNEZ CARDONA y ELBA APONTE DE RODRÍGUEZ, recurridas.

*Número:* O-82-445 *Resuelto:* 11 de mayo de 1983

*José R. Ortiz,* abogado de la peticionaria; *Pedro L. Ruiz Ortiz,* abogado de la recurrida Elba Aponte de Rodríguez; *Domingo A. Vivaldi,* abogado de la recurrida Cielo Martínez Cardona.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

Hace tres décadas los autores de nuestra Constitución concibieron que la "protección contra ataques a la honra, reputación y vida privada" era complemento integral e indispensable del concepto mayor de dignidad humana. Destacaron que el "honor y la intimidad son valores del individuo que merecen protección cabal" frente a atentados e ingerencias abusivas de las autoridades y personas particulares. Así extendieron expresamente el ámbito de la inviolabilidad de la persona a toda área necesaria para el desarrollo de ésta —hogar, muebles, documentos y los medios de comunicación. Concluyeron que "[t]oda intromisión *sin su permiso* en ese círculo privado equivale para todo hombre a una violación de su personalidad", lesión que era "el más penoso ataque a los derechos fundamentales de la persona". No obstante, con pragmatismo y visión admitieron que esos mismos medios y propiedades podían "ser instrumento de delito o resultado de su comisión" y, por ende, rechazaron "detenerse ante esas fronteras de la personalidad[, pues] equivaldría a la protección indebida del delito y del delincuente". Con sabiduría y fino balance intelectual, en esa "colisión de lo privado y lo público, la solución se entrega, con todas las garantías, a la autoridad

judicial. . .". 4 *Diario de Sesiones de la Convención Consti-tuyente de Puerto Rico* 2566-2567 (1952). [1]

La decisión de hoy es importante por varias razones. Primeramente, aclara esa visión y encomienda constitucional. Segundo, ubica en su correcta perspectiva la jerarquía de valores fundamentales de nuestra comunidad. Tercero, resuelve y provee una solución interina a un grave problema, sin menoscabo de acción legislativa ulterior. Y cuarto, reivindica el lesionado derecho a la intimidad de dos ciudadanos que poseen teléfonos en sus hogares, a la vez que protege a la ciudadanía en circunstancias similares.

## I

La Sra. Cielo Martínez Cardona, quien por razón de su divorcio vive sola con sus hijos menores de edad, empezó a recibir en su hogar repetidas llamadas telefónicas anónimas que perturbaron su tranquilidad mental, menoscabaron indebidamente su derecho de intimidad y le causaron graves daños morales y emocionales. Igual sucedió a la siquiatra Dra. Elba Aponte de Rodríguez, quien comenzó a recibir frecuentes amenazas por teléfono en detrimento de su sosiego personal y la serenidad familiar.

Oportunamente promovieron por separado ante el Tribunal Superior, Sala de Ponce, expedientes de jurisdicción voluntaria y solicitaron una orden dirigida a la Puerto Rico Telephone Co. ("la Telefónica") para que ésta interceptara sus respectivos teléfonos con el propósito de poder determinar la procedencia de las llamadas en cuestión y, por ende, identificar al autor o autores de las mismas. Los autos

---

[1] La conclusión de que la Convención Constituyente rehusó encomendar directamente a los tribunales la protección del derecho a la secretividad telefónica es cuestionable. 3 *Diario de Sesiones de la Convención Constituyente de Puerto Rico* 1581-1585 (1952). A lo que la Asamblea Constituyente se negó fue a equiparar interceptaciones telefónicas siguiendo el método prescrito para mandamientos de registro, allanamientos o arrestos fundados en causas probables, lo cual es materia claramente penal, con referencia al Estado. Nunca previó la situación sobre la cual versa el recurso de epígrafe: *solicitudes de los propios usuarios para que, en protección de sus respectivos derechos a la intimidad, se intercepten sus teléfonos.*

no reflejan que antes se hubiesen querellado a las autoridades del orden público.

El tribunal accedió a ambas peticiones. La Telefónica objetó. Adujo que el área a que están adscritos los teléfonos de las promoventes no disponía del equipo técnico necesario que le permitiera rastrear el origen de las llamadas sin intervenir con el contenido de la comunicación. [2] Expuso que, en tales circunstancias, la interceptación sería contraria a la Sec. 10 de nuestra Carta de Derechos y al estatuto federal que regula la interceptación telefónica, aplicable al Estado Libre Asociado de Puerto Rico, el Tít. III del *Omnibus Crime Control and Safe Streets Act*, 18 U.S.C. secs. 2510–2520.

El foro de instancia, previa consolidación, evaluó los méritos de esa contención y mediante dictamen escrito reiteró su facultad para ordenar las interceptaciones. En su resolución discutió las disposiciones constitucionales nuestras que, por un lado, prohíben la interceptación de comunicaciones telefónicas y, por otro, protegen el derecho a la vida privada o familiar. También aludió extensamente a la legislación penal pasada y presente en lo que concierne al esfuerzo legislativo para proteger el derecho de intimidad mediante la prohibición de la utilización ilícita de las vías telefónicas y la interceptación, grabación o interferencia ilegal de toda clase de comunicación privada o verbal, y el castigo por violar dichas disposiciones.

El decreto, aunque concluyó la aplicabilidad a Puerto Rico del estatuto federal —a pesar de la prohibición dispuesta en nuestra Carta de Derechos— descartó que ello fuera un obstáculo para que una persona privada, con el propósito de protegerse, solicite y obtenga una orden judi-

---

[2] En su alegato reconoce que posee ese equipo en otras áreas y mediante el mismo puede detectar el origen de la llamada en progreso sin intervenir con el contenido de la comunicación.

El análisis jurídico y la permisibilidad de esa técnica no están ante nuestra consideración.

cial para que se intervenga su *propio* teléfono. En consecuencia, elaboró el siguiente procedimiento para servir de guía a las peticiones y órdenes de esta naturaleza:

A. La petición solicitando autorización judicial para intervenir o interceptar un teléfono debe ser incoada en la siguiente forma:

1. Bajo juramento, con notificación al Ministerio Público, en procedimiento ex parte.

2. Contendrá un relato completo de las circunstancias y los hechos que justifican que se ordene la intervención del teléfono.

3. Se interceptará el teléfono del peticionario —donde se reciben las llamadas— para rastrear el teléfono de origen, con descripción de las facilidades para realizar la gestión por parte de la compañía de teléfonos (teléfono adicional en el sitio donde se recibe la llamada o teléfono del vecino de donde se comunicará a La Telefónica de la llamada anónima).

4. Se renunciará al derecho constitucional que consagra el artículo [*sic*] 10 de la Constitución.

5. Se hará prohibición expresa de grabaciones de la comunicación.

6. Se hará expresión clara del tiempo por el cual se extenderá la intervención del teléfono.

B. Se celebrará una vista con la intervención del Ministerio Público y luego se emitirá la resolución u orden por el tribunal.

C. La resolución u orden del tribunal contendrá lo siguiente:

1. El teléfono a ser interceptado y las facilidades que hay para realizar el rastreo. (Ver el tercer requisito de la petición.)

2. Describirá, sucintamente, el tipo de comunicación que se va a interceptar y la prohibición de grabarla.

3. Será dirigida a la compañía telefónica (la Puerto Rico Telephone Company).

4. Expondrá el plazo de duración y sólo podrá extenderse o prorrogarse dicho período de tiempo con la intervención del Ministerio Público y la aprobación del tribunal después que se muestre que se justifica tal plazo adicional.

Finalmente, retuvo jurisdicción y dispuso que, una vez enmendadas las peticiones de conformidad con dichas directrices, celebraría una vista y adjudicaría la misma.

## II

A solicitud de la Telefónica revisamos. En esencia, su tesis está predicada básicamente en dos proposiciones. Primera, que un ciudadano que es amenazado, ofendido e injuriado por vía telefónica no está facultado para requerir decretos de interceptación telefónica, porque la persecución del delito ante los tribunales corresponde al Ministerio Fiscal; y, segunda, que no existe estatuto local que reglamente el procedimiento de interceptación telefónica —tal y como lo exige la ley federal— y, por consiguiente, el Estado está impedido de recurrir a ese método como medida para combatir el crimen.

La primera proposición —respecto a la facultad privativa del Ministerio Fiscal para perseguir el crimen— descansa en el supuesto de que cuando un ciudadano acude a un tribunal a obtener una de estas órdenes de interceptación telefónica, lo hace con el ánimo de investigar un crimen exclusivamente. A poco que hurguemos en esta hipótesis descubriremos, sin embargo, que está asentada sobre una premisa de frágil consistencia.

Nadie niega que la investigación del crimen y el encausamiento por infracciones a las leyes penales del país ante los tribunales atañe a los funcionarios del Poder Ejecutivo, a quienes la ley ha reservado tales funciones. *Pueblo* v. *Tribunal Superior*, 94 D.P.R. 59, 65 (1967). Así, la Policía de Puerto Rico tiene la obligación de "proteger a las personas y a la propiedad, mantener y conservar el orden público, observar y procurar la más absoluta protección de los derechos civiles del ciudadano, [y] prevenir, descubrir y perseguir el delito". 25 L.P.R.A. sec. 1003. Los fiscales del Departamento de Justicia tienen, por otro lado, el deber de "procesar a todos los delincuentes por crímenes y delitos". 3 L.P.R.A. sec. 95.

 Ninguna de las anteriores facultades excluye la vindicación del derecho a la intimidad ante los tribunales, por simple iniciativa privada, independientemente de la participación incidental de cualquier funcionario o agencia del gobierno. El ciudadano afectado por el estorbo que representa el raudal de llamadas indeseadas y ofensivas no tiene que esperar por el curso de una investigación criminal ordinaria llevada a cabo por las agencias del orden público. Puede, si lo estima conveniente, hacer sus propias averiguaciones encaminadas a proteger y reivindicar su derecho a la intimidad del modo en que lo ha reconocido nuestra jurisprudencia, a saber, mediante el recurso de *injunction* —*Sucn. de Victoria* v. *Iglesia Pentecostal*, 102 D.P.R. 20, 25 (1974)— o, en definitiva, mediante la correspondiente acción civil por daños —*Colón* v. *Romero Barceló*, 112 D.P.R. 573 (1982).

En conclusión, el ejercicio de este derecho por la vía penal, así como la disponibilidad de dicho curso de acción, no es incompatible con su ejercicio por la vía civil ni la excluye. *Vda. de Morales* v. *De Jesús Toro*, 107 D.P.R. 826 (1978). En ese sentido al ciudadano no se le prohíbe que acuda a los tribunales para poder sustentar la correspondiente reclamación fuera de la órbita penal.

## III

*Inaplicabilidad del estatuto federal*

Consideramos la aplicabilidad a Puerto Rico del *Omnibus Crime Control and Safe Streets Act*, 18 U.S.C. secs. 2510–2520 (Tít. III). [3]

 En principio la legislación federal, por disposición expresa, se extiende al Estado Libre Asociado en

---

[3] Sobre la intención legislativa, véase el Informe del Senado Núm. 1097 en 2 *U.S. Code Congressional and Administrative News* 2112 (1968). Puntualizamos que el estatuto se promulgó tomando en consideración los parámetros esbozados por el Tribunal Supremo federal en los casos de *Berger* v. *New York*, 388 U.S. 41 (1967), y *Katz* v. *United States*, 389 U.S. 347 (1967).

casos apropiados. 18 U.S.C. sec. 2510(3). Observamos, sin embargo, que es posible que en determinadas circunstancias sea inaplicable por sus propios términos a Puerto Rico o cualquier Estado, pues la misma no pretende ocupar enteramente el campo, sino que permite a éstos que impongan requisitos más estrictos para la interceptación de las comunicaciones. (⁴) A tal efecto notamos que desde el año 1952, en virtud de la prohibición establecida en la Sec. 10 del Art. II de nuestra Constitución, el tratamiento y evolución en materia de nuestra legislación penal ha sido consistentemente adherirse a que se cumpla celosamente con dicha proscripción. (⁵) No podemos concebir lenguaje más limitativo que el que aparece en nuestra Ley Fundamental.

Por ello, antes de considerar el efecto del ajustado lenguaje que contiene la Sec. 10 es imprescindible dilucidar si en verdad el estatuto federal le impone una camisa de fuerza a los ciudadanos y tribunales puertorriqueños, tal y como sugiere la Telefónica. Resolvemos en la negativa.

El estatuto federal, de índole penal, es sumamente explícito. No es aplicable al caso de autos. Declara que *no* será ilegal que una persona que actúe so color de autoridad intercepte una comunicación alámbrica u oral, cuando dicha persona es una de las partes en la comunicación o cuando una de éstas haya ofrecido previamente su consentimiento a la interceptación. 18 U.S.C. sec. 2511(2)(c). (⁶)

---

(⁴) 2 *U.S. Code Congressional and Administrative News* 2187 (1968).

(⁵) Véanse los Arts. 144, 145, 146, 148, 149 y 152 del Código Penal. 33 L.P.R.A. secs. 4185, 4186, 4187, 4189, 4190 y 4193.

(⁶) "(c) It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.

"(d) It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire or oral communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State or for the purpose of commit-

*United States* v. *Caceres*, 440 U.S. 741, 750 (1979). La aquiescencia puede ser expresa o implícita. (7)

No hay duda, pues, de que en las circunstancias de autos está presente el elemento indispensable del consentimiento previo de una de las partes. Precisamente las peticiones juradas corresponden a unos abonados del servicio telefónico que han solicitado de manera expresa que se intercepte el contenido de la comunicación. No se trata de una acción de origen gubernamental. Tal hecho *remueve del palio protector de la ley federal al sujeto que llama lícita o ilícitamente* a un teléfono intervenido por instrucciones expresas del abonado. (8) Repetimos, el *Omnibus Crime Control and Safe Streets Act* es inaplicable, por no prohibirlo, cuando se trata de una solicitud del propio usuario. Tal interceptación voluntaria no es contraria a ningún mandato expreso del Congreso. Por ende, no está en juego la Sec. 9 de la Ley de Relaciones Federales.

## IV

Aclarado este extremo, nos percatamos de que la conclusión de que en estas circunstancias concretas sea inaplicable el estatuto federal no necesariamente significa que los estados y Puerto Rico no pueden ser más exigentes en la tutela de los derechos involucrados y que a su vez impongan requisitos más rigurosos para la interceptación telefónica. Nuestra Constitución dispone que "[n]o se interceptará la comunicación telefónica". Art. II, Sec. 10. Ese mandato nos coloca precisamente en el umbral del verdadero problema

---

ting any other injurious act." Esta disposición recogía la norma jurisprudencial prevaleciente. Véanse, *López* v. *United States*, 373 U.S. 427 (1963); *Rathbun* v. *United States*, 355 U.S. 107 (1957); y *On Lee* v. *United States*, 343 U.S. 747 (1952).

(7) 2 *U.S. Code Congressional and Administrative News* 2182 (1968).

(8) Algunos estados, mediante legislación o en virtud de interpretación judicial de estatutos locales, han dado diferente tratamiento a la renuncia de este derecho. Véase, C. Fishman, *The Interception of Communications without a Court Order: Title III, Consent, and the Expectation of Privacy*, 51 St. John's L. Rev. 41 (1976).

jurídico planteado: ¿Es esta prohibición absoluta? ¿A quién o a quiénes aplica? ¿El derecho que emana de ella es renunciable? Si lo es, ¿de qué modo se puede renunciar a él o cómo se entiende renunciado? ¿Se requiere legislación habilitadora para ello? Examinemos estas interrogantes.

## A. *Primacía del derecho a la intimidad*

El derecho que los peticionarios pretenden proteger es, según Castán, (9) de los llamados derechos de la personalidad, de índole innata y privada. En nuestra sociedad toda persona es acreedora al derecho a la reserva de la vida privada: a una vida íntima familiar. Es inherente al hombre y goza de primogenitura en nuestra descendencia constitucional. No estamos ante uno en la esfera de lo económico, v.g., caso de cobro de dinero u otro análogo en que está involucrado solamente un bien o interés patrimonial.

Por su primacía está consagrado, además de en la Sec. 10, en las Secs. 1 y 8 del Art. II de la Constitución. En lo pertinente rezan:

> Sec. 1—La dignidad del ser humano es inviolable.
>
> Sec. 8—Toda persona tiene derecho a [la] protección de [la] ley contra ataques abusivos a su honra, a su reputación y a su vida privada o familiar.

En *Figueroa Ferrer* v. *E.L.A.*, 107 D.P.R. 250, 258-259 (1978), nos expresamos extensamente sobre la naturaleza y proyección de este derecho. Dijimos:

> En *E.L.A.* v. *Hermandad de Empleados*, 104 D.P.R. 436, 439-440 (1975), apuntamos que el derecho a la intimidad tiene un historial distinto en Puerto Rico al que tiene en Estados Unidos. Añadimos que nuestro Art. II, Sec. 8 es una copia literal del Art. V de la Declaración Americana de los Derechos y Deberes del Hombre y que entronca también con el Art. 12 de la Declaración Universal de los Derechos del

---

(9) J. Castán Tobeñas, *Derecho civil español, común y foral*, 11ma ed., Madrid, Ed. Reus, 1971, T. I, Vol. II, pág. 325.

Hombre. *Recalcamos que nuestra Asamblea Constituyente quiso "formular una Carta de Derechos de factura más ancha que la tradicional, que recogiese el sentir común de culturas diversas sobre nuevas categorías de derechos".*

En *Cortés Portalatín* v. *Hau Colón,* 103 D.P.R. 734, 738 (1975), nos habíamos referido también a la amplitud del derecho a la intimidad. "Representando así esta sección [la número 8 del Art. II], como varias otras," afirmamos, "un principio con aspiraciones de universalidad, destilado de muy diversos sistemas jurídicos, ancho es el mundo que se nos brinda para su interpretación justa. No se está obligado por juegos específicos de reglas históricas. *La obligación es acatar el mandato constitucional, en consonancia con otras disposiciones de nuestra ley primaria y las realidades del país.*" (Énfasis nuestro.)

■ Tan trascendental es este derecho en nuestra sociedad que, en las ocasiones en que se ha contrapuesto a otros de similar jerarquía, ha salido airoso del careo constitucional. Así, por ejemplo, ha prevalecido ante los siguientes derechos fundamentales: de libre expresión, *Hermandad de Empleados,* supra (piquete frente a la residencia del Secretario del Trabajo); de libertad de culto, *Sucn. de Victoria,* supra (servicios religiosos que trascendían al vecindario); y de propiedad, *Torres* v. *Rodríguez,* 101 D.P.R. 177 (1973) (establecimiento de funeraria en zona residencial). También ha predominado frente a la legislación limitante de la decisión de los cónyuges que por mutuo acuerdo optan por terminar su matrimonio. *Figueroa Ferrer,* supra.

Por la importancia que reviste, hemos saturado nuestra docrina jurisprudencial del principio rector de que la intimidad no necesita de legislación habilitadora que le insufle vida y aliento. Opera por su propia fuerza y vigor. *Colón* v. *Romero Barceló,* supra, pág. 576; *Figueroa Ferrer,* supra, pág. 259; *Hermandad de Empleados,* supra, pág. 440; *Alberio Quiñones* v. *E.L.A.,* 90 D.P.R. 812, 816 (1964); *González* v. *Ramírez Cuerda,* 88 D.P.R. 125, 133 (1963). Véanse, *Robles López* v. *Guevárez Santos,* 109 D.P.R. 563, 567 (1980);

*Cortés Portalatín,* supra, pág. 738; y *Pueblo* v. *Figueroa Navarro,* 104 D.P.R. 721, 726-727 (1976).

En resumen, el análisis que precede revela la verdadera naturaleza del derecho a la intimidad. Incuestionablemente goza de primacía en la pirámide constitucional. Ese sitial nos permite contestar una de las interrogantes formuladas: su implementación no requiere legislación específica. Supeditarlo a la acción legislativa sería simplemente incongruente con el propósito de los forjadores de la Constitución y representaría una contramarcha en su evolución vindicadora. Lo reduciríamos a una escala nominal.

B. *Alcance de la prohibición*

Concentremos nuestro examen en investigar el verdadero alcance de la prohibición de que no se interceptarán comunicaciones telefónicas. Varias consideraciones aclaran sus horizontes, según el legajo de la Constituyente.

■ Lo primero que observamos es que su texto está ubicado separadamente de la Sec. 8 y que se encuentra entre las disposiciones sobre los registros y allanamientos de persona y morada. No obstante, a poco que reflexionemos percibimos que tal ordenación no desvirtúa su esencia ni significa un distanciamiento conceptual. Precisamente la cláusula de interceptación telefónica, por su propia naturaleza, pertenece a la esfera del derecho a la intimidad consagrado en la mencionada Sec. 8, y forma parte integral del mismo. Así pues, el derecho de una persona a que no se le intercepte su teléfono es parte esencial del derecho mayor a la protección de la ley contra ataques abusivos a su honra, reputación y vida privada o familiar.

■ En segundo lugar, y como corolario, es menester concluir que su mención expresa en la Sec. 10 responde a la intención específica de vedar, sin lugar a dudas, la intromisión *no consentida* en las comunicaciones telefónicas. Tercero, esa cláusula, aunque aislada, no representa en definitiva un derecho distinto al derecho a la intimidad en sí, ni

es de rango superior al de éste; es una de sus manifestaciones. ([10])

Y cuarto, este enfoque es compatible con la regla de hermenéutica de que las diferentes cláusulas de la constitución no deben interpretarse de forma tal que se produzca un resultado absurdo. La función del Poder Judicial, como intérprete, es armonizar sus distintos mandamientos y preceptos con miras a lograr una decisión justa y razonable a tono con la intención de la Asamblea Constituyente.

## C. *Titulares del derecho*

██ El récord de la Constituyente refleja que al adoptarse la prohibición que nos ocupa sus forjadores tomaron como modelo el estatuto y la doctrina federal entonces vigentes. (*Federal Communications Act of 1934*, 48 Stat. 1103–1104.) En ese momento histórico, bajo dicho estatuto, al igual que en la actualidad, era factible y se preveía la renuncia de ese derecho por quien originaba la comunicación. 47 U.S.C. sec. 605. Pero lo cierto es que nuestra Constituyente trascendió esa visión y robusteció ese derecho mediante una prohibición terminante concebida en términos definitivos no cualificados. Así quedó plasmado de ma-

---

([10]) El siguiente diálogo despeja toda incertidumbre al respecto:

"Sr. Trías Monge: ¿Es o no es cierto que en relación con estos problemas de interferencia en la vida privada, debe leerse en la sección 10, el apartado que estamos discutiendo, conjuntamente con la sección 8? O sea, al final de la sección 8 definitivamente se establece que toda persona tiene derecho a protección de ley contra ataques abusivos a su honra, a su reputación y a su vida privada o familiar. ¿Es o no cierto que esta disposición es la general, que definitivamente garantiza al ciudadano en Puerto Rico lo que se conoce como el *right of privacy*, y que toda injerencia contra su vida privada, en la que naturalmente está envuelto el secreto de la comunicación telegráfica que haya recibido, queda comprendida; y que lo que se hace en la sección 10 es exponer específicamente el problema de la intercepción de la comunicación telefónica?

"Sr. Benítez: Le agradezco al compañero Trías Monge la intervención. Efectivamente eso es. En un caso se trata del principio genérico de la autonomía de la intimidad, del derecho a la intimidad y en este otro caso se hace la mención específica del teléfono porque ha habido intentos concretos para violentar esa intimidad y la estamos consiguientemente, prohibiendo específicamente." *Diario de Sesiones*, supra, T. 3, pág. 1586.

nera sustantiva y diferente —como intención orientadora— el ideal constitucional de extender la expectativa legítima de intimidad *a todo* ciudadano que se vale de las vías de comunicación telefónica. Como resultado, no es suficiente la renuncia de una sola parte para convalidar, ipso jure, una interceptación telefónica. Es menester que se configure una renuncia bilateral, sea expresa o implícita. ([11])

Compatible con ese enfoque, al presente el Código Penal contiene varios artículos que regulan la materia bajo la rúbrica de "Delitos Contra Derechos Civiles". En lo pertinente al caso, el Art. 144 ([12]) prohíbe que se intercepte una comunicación privada verbal telefónica. Esa protección está en armonía con el mandato constitucional. En su verdadera dimensión, estatutariamente crea una expectativa legítima de privacidad de que la conversación telefónica en sí no será interceptada ni escuchada por terceros. En consecuencia, y como regla universal, reafirmamos el derecho constitu-

---

([11]) El delegado en cuestión, Hon. José Trías Monge, expresó a modo de parafraste:

"Para indicar solamente que [en] la proposición recomendada por la [Comisión de] Carta de Derechos, de adoptarse la enmienda sugerida por el compañero Fernández Méndez, quedaría destruido definitivamente el propósito de la misma; *y que está fundamentada la enmienda, la proposición de la carta de derechos, en una disposición conocida, sumamente respetada en la exposición de derechos humanos, que forma parte del sistema federal de leyes.* El Congreso de los Estados Unidos, al aprobar la *Federal Communications Act* de 1934, reconoció definitivamente y sin reservas ni limitaciones de ninguna clase, que no podría ni debería en forma alguna interceptarse las comunicaciones telefónicas o de alguna otra clase." (Énfasis suplido.) *Íd.*, pág. 1585.

([12]) "Toda persona que con el fin de enterarse o de permitir que cualquiera otra se entere de una comunicación privada verbal, bien sea comunicación telefónica o por cualquier otro medio dirigida a un tercero, conecte, instale o utilice cualquier aparato o mecanismo, o cualquier otro modo, será sancionada con pena de reclusión, por un término fijo de dos (2) años. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de tres (3) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de un (1) año.

"El tribunal, a su discreción, podrá imponer la pena fija de reclusión establecida o pena de multa que no excederá de cinco mil (5,000) dólares, o ambas penas." 33 L.P.R.A. sec. 4185.

cional de todas las personas que hacen llamadas telefónicas a que ni el Estado ni ninguna otra persona se inmiscuya, escuche, entere o divulgue tales comunicaciones por cualesquier medios. ¿Qué impacto tiene este pronunciamiento y la norma constitucional en el desenlace del caso? Afortunadamente el asunto, aunque de su faz complejo, tiene solución. Después de todo, la Sec. 10 no se encuentra atada con un nudo gordiano.

### D. *Renunciabilidad del derecho*

 Al igual que otros derechos, inclusive los de estirpe constitucional, el de intimidad —y su derivado de no interceptación telefónica— es renunciable. *Cf. Pueblo* v. *Acevedo Escobar*, 112 D.P.R. 770, 777 esc. 4 (1982); y *Schneckloth* v. *Bustamonte*, 412 U.S. 218, 235 *et seq.* (1973). En su dinámica no es absoluto. Su única característica de absoluto es el albedrío que tiene el ciudadano para reclamar del Estado, y los tribunales hacer valer, el respeto a la expectativa legítima de intimidad que rodea su comunicación telefónica. Bajo la política pública constitucional vigente, a menos que haya una renuncia patente, específica e inequívoca, el Estado no puede inmiscuirse en la comunicación. Salvo esto, el derecho a la intimidad es inviolable y el Estado, una entidad particular, o cualquier ciudadano están impedidos, sin otras excepciones, de interceptar o permitir que se intercepte o escuche una comunicación telefónica.

 Ahora bien, el usuario víctima de la lesión y agravio a su intimidad que accede y solicita judicialmente que su teléfono sea interceptado, incuestionablemente renuncia al derecho constitucional que le brinda la Sec. 10. En esas circunstancias, repetimos, no puede haber duda de la intención clara y específica de abdicar dicho derecho. Mas, ¿qué del derecho que tienen aquellas terceras personas que llaman a determinado teléfono que está interceptado a solicitud del abonado? Al reflexionar sobre la cuestión notamos

que la clave del enigma radica en la interpretación de la naturaleza y contornos del derecho que emana de la Constitución y del Art. 144 del Código Penal.

A tal efecto, es menester resaltar varias observaciones conceptuales, jurídicas y pragmáticas. En su origen el Art. 144 pretende tutelar en el ámbito penal el derecho de toda persona a que sin su permiso se intercepte y escuche el contenido privado de su conversación con otra. Sin embargo, razonable y lógicamente tal derecho presupone y se extiende únicamente a conversaciones lícitas consentidas en el curso ordinario de las relaciones bilaterales humanas —familiares, amistosas o comerciales— que conlleva la vida en sociedad. Nadie está obligado a entablar y mantener una comunicación con un extraño. En esta zona únicamente el deseo o el deber que imponen las reglas de cortesía prevalecen. Quien origina aislada o repetidamente llamadas telefónicas sin autorización expresa o implícita del destinatario no puede argumentar persuasivamente que no renuncia su derecho a tal protección.

El Art. 144, que prohíbe la interceptación de una conversación entre dos o más personas, no es de aplicación cuando una de ellas no sólo no ha consentido, sino que resiente y rechaza el diálogo y la utilización de su teléfono con propósitos ilícitos y denigrantes, y la otra es el autor de tales actos. Exigir un apercibimiento previo en esa situación como medio para plasmar un asentimiento expreso o implícito del originario es penalizar al destinatario, que sólo tiene la intención no criminosa de protegerse de la llamada, autorizando la interceptación como medio disuasivo o para detectar su procedencia e identificar a su autor. Una interpretación distinta sería absurda y chocaría con el preclaro y prístino derecho constitucional que propugna la inviolabilidad y dignidad del ser humano y el respeto a su intimidad. En su aplicación humana el derecho no existe para exigir y perpetrar cosas imposibles, absurdas, inútiles o innecesarias. *Pueblo* v. *Andreu González*, 105 D.P.R. 315, 321 (1976).

El Art. 144 no puede analizarse aisladamente. Una interpretación congruente y compatible con la visión legislativa del Código Penal en materia de divulgación, publicación y alteración de comunicaciones privadas no autorizadas requiere una lectura integral. Véanse los Arts. 145, 146, 147 y 148 (33 L.P.R.A. secs. 4186, 4187, 4188 y 4189). En particular se destaca el Art. 152, que versa sobre la intrusión en la tranquilidad personal por la vía telefónica y otros medios de comunicación. Reza:

> Toda persona que por medio del teléfono o por cualquier otro medio similar profiriere lenguaje amenazador, abusivo, obsceno o lascivo a otra, o que con el propósito de molestar a cualquier persona efectúe repetidamente llamadas telefónicas u ocasione que el teléfono de otra persona dé timbre repetidamente, o toda persona que permita que cualquier teléfono bajo su control sea utilizado para cualquier propósito prohibido por la presente sección, será sancionada con pena de reclusión que no excederá de seis meses o multa que no excederá de quinientos dólares o ambas penas a discreción del tribunal.

Su texto y ámbito protector es evidente. Sería un contrasentido estimar que el autor de una llamada ilegal de este género, atentatoria a la intimidad, todavía está protegido constitucional o estatutariamente —en virtud de lo preceptuado en el Art. 144 antes comentado— y es merecedor a que se obtenga su consentimiento previo como requisito para disuadirlo de que no realice sus amenazas, abusos o vejámenes contra sus víctimas. De ese modo volitivo ilegal u otros análogos se deriva e infiere, por imperativo circunstancial, una renuncia clara al derecho. Quien atenta y vulnera la intimidad de su prójimo representa su antítesis y paradoja. Mal puede invocarla como escudo protector de su personalidad. Esa óptica obscura desarticularía in extremis el principio hermenéutico de que las leyes deben interpretarse armoniosamente logrando su verdadero sentido y recto significado.

## V

En las circunstancias apuntadas, el remedio dispuesto por el tribunal de instancia es compatible con el diseño constitucional prevaleciente. Resta solamente aclarar y precisar su implementación.

Primeramente, como medida inicial, el foro judicial debe evaluar si el derecho a la intimidad del usuario puede cabalmente protegerse disponiendo el cambio del número de teléfono, si ello es viable con razonable prontitud y el usuario accede.

Agotada esa alternativa u otras soluciones análogas, una vez cumplidos los trámites pertinentes, procede la orden de interceptación.

Reconocemos que esta decisión no está inmune a interpretaciones jurídicas distintas, producto de enfoques absolutos; tampoco a reparos basados en que su implementación en cierto sentido expone la intimidad de las personas que originen llamadas legítimas a un teléfono así interceptado. Esta última realidad es innegable. En el choque de valores constitucionales individuales, se trata de un menoscabo ínfimo de un derecho para vindicar otro igual —pero que adquiere mayor jerarquía constitucional— en circunstancias de una fluidez situacional de otro modo incontrolable e irremediable. Representa el costo espiritual dual que es menester pagar en aras de una protección a la privacidad cuyos beneficios comunitarios han de revertir con creces. En la práctica la exposición e impacto es exiguo. Nos explicamos.

En el curso ordinario y razonable de las relaciones humanas cotidianas, en la dinámica de una conversación telefónica existen y se pueden deslindar esencialmente dos etapas: la preliminar, que versa sobre la identificación de quien la origina y quien la recibe, y la referente al desarrollo del mensaje o diálogo ulterior. Sobre la etapa preliminar lo usual y normal es que al recibirse una llamada,

tanto autor como receptor —a escasos segundos de establecida, mediante intercambio verbal y antes de iniciada propiamente la conversación— se identifiquen recíprocamente, sea de manera espontánea o a solicitud de uno de ellos. Excepto llamadas involuntarias, erróneas o tecnológicamente discadas y procesadas, es poco corriente y frecuente que se realicen a teléfonos no deseados. Bajo cualesquiera alternativas no es común que se entable y sostenga por mucho tiempo una conversación sin que de algún modo previamente haya habido esa identificación expresa, o sus protagonistas —por razón de estar habituados o familiarizados con sus respectivas voces— prescindan de ese requerimiento formal de identidad. En este sentido, en casos como el que nos ocupa, resulta fácil y viable exigir que la Telefónica desconecte y se abstenga de continuar interviniendo y escuchando más allá de lo imprescindible las conversaciones hechas por personas que *bona fide* se identifican o son identificables por el propio usuario. De ordinario bastará escuchar la conversación en su etapa preliminar para que el funcionario de la Telefónica se percate y quede informado de este extremo. Adicionalmente, requerir un simple apercibimiento de parte del receptor al autor, indicativo de que dicho teléfono está interceptado por orden judicial a la primera oportunidad en que aquél advierte o reconoce su identidad genuina o que la llamada es de naturaleza legítima, de un lado es indispensable y del otro, suficiente para que la central de la Telefónica interrumpa y cese, a la brevedad posible, la interceptación y rastreo.

En cuanto a estas conversaciones *bona fide* y legítimas, producto de la voluntad y anuencia de ambas partes, subsiste en todo su esplendor la interdicción constitucional y las prohibiciones del Código Penal. Sobre estas conversaciones no podría mantenerse ni continuarse una interceptación mediante ningún medio mecánico o análogo sin el consentimiento o renuncia de todas las partes que intervienen. Todo decreto judicial en que se conceda este

remedio dispondrá claramente los límites de la autorización y que la interceptación se extenderá únicamente el tiempo estrictamente necesario para detectar la naturaleza de la llamada, identificar su origen y autor, y si se acepta. Cuando en su implementación y con referencia a llamadas legítimas, incidental o accidentalmente —aun mediando el aviso— no surgiere una renuncia expresa o tácita[13] y se escuchen conversaciones ajenas al propósito que motivó dicho decreto judicial —vindicar y amparar el derecho de la intimidad del peticionario— éstas también se estimarán protegidas por el Art. II, Sec. 10 de la Constitución.[14]

Pueden adelantarse también ciertas dificultades prácticas o problemas tecnológicos o gastos adicionales en la administración del sistema telefónico del país o que la Asamblea Legislativa debe actuar primero. En el choque y balance de valores individuales y públicos envueltos algunos deben ceder y los escollos, superarse. La Legislatura puede manifestarse en el futuro, al igual que lo ha hecho en el pasado en otros asuntos sobre los cuales han recaído decisiones. *Sucn. de Victoria*, supra. Nuestro análisis y disposición —que se circunscribe a los hechos específicos del caso y deja expresamente sin resolver otros ángulos más complejos del problema— no niega esa opción ni es incompatible con los remedios inmediatos e interinos propuestos. Remitir los remedios a la Legislatura es apropiado y prudencial en algunos casos. Véase, *Pueblo* v. *Bou Nevárez*, 111 D.P.R. 179, 188 (1981). Sin embargo, en el que nos ocupa no. El agravio es patente e intenso, el remedio, impostergable.

---

[13] Si por circunstancias excepcionales y justificadas no se brinda el aviso en llamadas y conversaciones telefónicas legítimas, no se configura una renuncia. El incumplimiento del deber afirmativo de apercibir a quien origina una llamada legítima podría ser fuente de responsabilidad penal, civil o ambas.

[14] Precisamente para minimizar el efecto que esto pudiera producir es que la solución que hoy damos al problema debe restringirse a que la parte afectada acuda inexorablemente a una autorización u orden judicial para poder interceptar su teléfono, sujeto dicho dictamen al cumplimiento de los requisitos esbozados.

Como expresó la ilustrada sala de instancia "[d]esde los comienzos de nuestros tiempos los pobres de espíritu, los enfermos del alma, los bromistas a jornada completa, [a] los que le[s] falta el valor y otros, recurren al anónimo para dar paso a sus fechorías. Es un vil delito que no debe quedar impune". Ante la deformidad moral de algunos, el que la Telefónica no cuente con el equipo más moderno en toda la isla se comprende, pero no es excusa para no remediarse la situación. Tampoco lo son razones de orden económico. La moneda no debe prevalecer sobre el costo espiritual de una intimidad innecesariamente lastimada. De sus dos caras, hemos de evitar imponerles a las peticionarias el cargar la cruz.

En nuestra compleja sociedad moderna el ciudadano ya está suficientemente expuesto a los peligros fuera del hogar. Los tribunales no podemos cruzarnos de brazos. No debe posponerse el remedio en aras de una posible acción legislativa. La solución propuesta, aunque técnica y jurídicamente no sea perfecta, está accesible como método para viabilizar y lograr una reivindicación pronta e inmediata para las recurridas. Así lo reconoce la Telefónica. Su único reparo, debido a que en el área de Ponce tendrían que interceptar parte del contenido de las llamadas, está fundado en la premisa jurídica errónea de que ello podría confligir con nuestra Constitución o el estatuto federal. Hemos visto que no es así.

El poder judicial no debe agravar el estado de semi-in-defensión en que se encuentran las peticionarias ante el abuso y agravio de que son objeto.([15]) El fin de la Consti-

---

([15]) En *Vizcarra Castellón* v. *El Pueblo*, 92 D.P.R. 156, 167 (1965), citamos con aprobación la doctrina de "que el proferir lenguaje vil, abusivo e indecente por teléfono constituye una infracción del estatuto" sobre alteración de la paz. En *Pueblo* v. *Caro González*, 110 D.P.R. 518, 524 (1980), en que sostuvimos que a un policía se le puede alterar la paz dijimos: "Un cambio en el énfasis de los intereses envueltos corrobora lo antes dicho. Principios de fundamental jerarquía, raigambre constitucional que se dirigen a proteger al ciudadano individual contra toda afrenta a su honra, reputación, dignidad e integridad, han venido a predominar...."

tución es la convivencia social con respeto y justicia para todos. Su vitalidad descansa en su dinamismo. Es un documento que rebasa las preferencias personales de sus autores y plasma las esperanzas de ulteriores generaciones. Su factura es moderna, de lenguaje claro y sencillo, susceptible a una continua renovación. No está escrito en lengua extinta, arduo de descifrar y referente a asuntos esotéricos. Interpretamos una Constitución, no los Rollos del Mar Muerto. Nuestra decisión no es incompatible con las garantías que un Estado democrático debe a sus ciudadanos. Únicamente de ese modo superamos el espectro de "que este Tribunal es impotente bajo la Constitución para proteger el derecho a la intimidad de los ciudadanos de este país en este aspecto . . . ; que carece igualmente de *poder* para impedir la degradación a que a menudo se [le] fuerza . . . bajo la situación imperante; *y que su papel no puede rebasar al del simple espectador limitado a lo sumo a lamentar el desprestigio que sufre necesariamente un sistema jurídico divorciado de la realidad a la que se supone que sirva. . . .* En buena teoría de adjudicación, además, los parlamentos no son los únicos agentes de cambios sociales necesarios. Cuando se trata de mantener vivo un esquema constitucional, de conservarlo en buena sintonía con las realidades del país, es principal deber de la judicatura propender igualmente a tal fin, aunque con la mesura y circunspección que le impone su papel dentro de nuestro sistema de gobierno y sin exceder al marco de sus atribuciones". (Énfasis suplido.) *Figueroa Ferrer*, supra, pág. 278.

Hoy nuevamente escogemos esa ruta. Permitir limitadamente la interceptación *consentida*, sujeta a la intervención exclusiva de los tribunales, fortalece y vivifica el derecho de toda persona a que se respete su vida íntima y familiar. Vindicar el derecho constitucional a la intimidad es función judicial que rehusamos abdicar.

Por los fundamentos expuestos y con sujeción a los pronunciamientos vertidos, *se confirma el dictamen del Tribunal Superior, Sala de Ponce.*

El Juez Asociado Señor Torres Rigual emitió opinión concurrente. El Juez Presidente Señor Trías Monge emitió opinión concurrente y disidente.

—O—

Opinión concurrente del Juez Asociado Señor Torres Rigual.

Estoy de acuerdo con la confirmación de la sentencia del tribunal de instancia en este caso.

La interdicción a la interceptación de la comunicación telefónica preceptuada en el Art. II, Sec. 10 de nuestra Constitución no es más que un reconocimiento del derecho a la intimidad consagrado en la Sec. 8. Ésta constituye la disposición de carácter general y aquélla tan solo la especie.(¹) Este derecho a la intimidad es, sin duda, altamente privilegiado en nuestro orden de valores, pero, como observa agudamente el compañero Juez Señor Trías Monge en su opinión concurrente y disidente, no constituye un muro infranqueable. En efecto, no podemos convertir el derecho a la intimidad en mero artilugio de escape para liberar a los ciudadanos de las consecuencias de sus errores de juicio al compartir sus actuaciones, sus ideas, en fin, su intimidad

---

(¹) Así surge del 3 *Diario de Sesiones de la Convención Constituyente de Puerto Rico* 1586 (1952):

"Sr. Trías Monge: ¿Es o no es cierto que en relación con estos problemas de interferencia en la vida privada, debe leerse en la sección 10, el apartado que estamos discutiendo, conjuntamente con la sección 8? O sea, al final de la sección 8 definitivamente se establece que toda persona tiene derecho a protección de ley contra ataques abusivos a su honra, a su reputación y a su vida privada o familiar. ¿Es o no cierto que esta disposición es la general, que definitivamente garantiza al ciudadano en Puerto Rico lo que se conoce como el *right of privacy,* y que toda injerencia contra su vida privada, en la que naturalmente está envuelto el secreto de la comunicación telegráfica que haya recibido, queda comprendida; y que lo que se hace en la sección 10 es exponer específicamente el problema de la intercepción de la comunicación telefónica?

"Sr. Benítez: Le agradezco al compañero Trías Monge la intervención. Efectivamente eso es. En un caso se trata del principio genérico de la autonomía de la intimidad, del derecho a la intimidad y en este otro caso se hace la mención específica del teléfono porque ha habido intentos concretos para violentar esa intimidad y la estamos consiguientemente, prohibiendo específicamente."

con otras personas que pueden utilizarlas en forma contraria a los intereses de aquéllos.

Una persona tiene derecho a mantener en la intimidad su cuerpo, su hogar, sus documentos y excluir de ese ámbito al Estado y a su prójimo. Más aún, puede exigir reparación cuando éstos invaden su vida privada. *Colón* v. *Romero Barceló*, 112 D.P.R. 573 (1982). Pero no puede invocar el derecho a la intimidad el que fiado en la prudencia del otro le abre la puerta del hogar y le hace partícipe de sus asuntos, salvo, por supuesto, las excepciones de privilegios preceptuadas en la ley, para luego en nombre de la intimidad pretender que se reprima la divulgación de su imprudencia. El hombre es esclavo de lo que dice y amo de lo que calla, nos advierte con profunda sabiduría el refranero popular.

Tengo claro que dos personas que se comunican, que comparten su intimidad, bien personalmente o a través de equipo eléctrico, tienen el derecho constitucional de excluir de su comunicación a todo extraño. No obstante, ninguno de los comunicantes tiene derecho constitucional alguno de impedir que el otro retenga para sí —ya descansando en la memoria o en una grabadora— lo que voluntariamente le comunicó. No veo manera de argumentar que cuando dos personas charlan frente a frente les asiste a cada uno el derecho constitucional de impedir al otro conservar mecánicamente para sí la conversación. Menos aún puedo aceptar que ese resultado sea distinto cuando la comunicación se establece por teléfono o por otro medio mecánico. Adviértase que me refiero a la comunicación voluntaria entre dos personas y no a la intervención de un extraño, que es lo que, a mi entender, prohíbe la Constitución.

En efecto, la interpretación anterior ha sido impartida al derecho a la intimidad que protege a los ciudadanos norteamericanos por virtud de la interacción de la cuarta, quinta y decimocuarta enmiendas a la Constitución. *United States* v. *Caceres*, 440 U.S. 741, 744, 750–752 (1979); *United States* v. *White*, 401 U.S. 745 (1971); *Lopez* v. *United States*,

373 U.S. 427 (1963). Igualmente ha sido interpretado el derecho que protege a los puertorriqueños en casos procesados por la corte federal en Puerto Rico. *United States* v. *Cordero,* 668 F.2d 32, 39 n. 11 (1st Cir. 1981). Nada he encontrado ni en el texto ni en el historial de nuestra Constitución que requiera un resultado distinto.

Creo firmemente que en época de agitación como la que vivimos, de presión económica, social y política, los ciudadanos deben tener una protección eficaz para impedir la invasión a la vida familiar íntima que representa el comentario obsceno, extorsionista, oprobioso, que tan fácilmente puede hacerse por teléfono. Por eso no se deben poner trabas al derecho de las recurridas a impedir la perturbación de su intimidad mediante la interceptación de sus teléfonos. No obstante, su actuación, al requerir a la recurrente la interceptación, puede ser fuente de responsabilidad bajo el Art. 1802 del Código Civil, si no apercibe diligentemente a la persona que de buena fe hace una llamada legítima a su teléfono y como consecuencia de su omisión le causa un daño.

En cuanto al efecto del Art. 149 del Código Penal sobre la presente controversia y pasando por alto el hecho de que no nos enfrentamos con una acusación criminal en autos, entiendo francamente que la interceptación de una comunicación telefónica por orden del tribunal y para protección del derecho a la intimidad de una parte carece del elemento de intención criminal necesaria para una convicción criminal.

Por las razones anteriores, concurro con la confirmación de la resolución recurrida.

—O—

Opinión concurrente y disidente del Juez Presidente Señor Trías Monge.

Dos ciudadanas privadas, víctimas de llamadas amenazantes en un caso y lesivas en el otro a su tranquilidad y

sentido moral, instaron ante el Tribunal Superior peticiones *ex parte* para que la Puerto Rico Telephone Company interceptase sus teléfonos. El tribunal emitió, sin celebración de vista, órdenes para el rastreo de las llamadas. La Puerto Rico Telephone Company presentó una moción para dejar sin efecto las órdenes. Señaló que las centrales a que pertenecen los teléfonos concernidos carecen de equipo para rastrear el origen de una comunicación telefónica sin intervenir con su contenido. Argumentó, además, que de efectuarse el rastreo se estaría violando la Sec. 10 del Art. II de la Constitución de Puerto Rico y lo dispuesto por la legislación federal pertinente. 82 Stat. 197 *et seq.*, 18 U.S.C.A. secs. 2510-2520.

El tribunal dictó una resolución en que requiere que se reformulen las peticiones en modo más correcto y en forma análoga, aunque no idéntica, a la especificada en la citada legislación federal. El tribunal adelantó su criterio sobre la procedencia de una orden de rastreo así reformulada.

La Puerto Rico Telephone Company ha acudido en alzada ante nosotros para que revoquemos la resolución recurrida. Acordamos revisar.

El pleito encierra dos cuestiones centrales. La primera exige resolver si la Sec. 10 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico, al decretar que "No se interceptará la comunicación telefónica", impide irremisiblemente que se proteja a la ciudadanía contra llamadas obscenas, amenazantes o que de otro modo vulneren su derecho a la intimidad. La segunda cuestión versa sobre el alcance de la legislación federal referente a la vigilancia electrónica y los medios de extender la protección indicada.

La opinión de la mayoría concluye que el Tít. III del *Omnibus Crime Control and Safe Streets Act*, Pub. L. 90-351, June 19, 1968, 82 Stat. 212 (18 U.S.C. secs. 2510-2520), no prohíbe la interceptación telefónica cuando uno de los participantes en la conversación ha prestado su consentimiento para tal interceptación. Señala también la opinión de la

mayoría que la legislación federal no ha ocupado todo el campo y que los estados pueden imponer requisitos más estrictos para la interceptación de las comunicaciones. Estoy de acuerdo con la opinión de la mayoría hasta ese punto. Disiento, sin embargo, de la parte de la decisión cuyo efecto es permitir en ciertas circunstancias la interceptación telefónica mediante orden judicial, cuando únicamente ha consentido a dicha interceptación la persona que recibe la llamada.

El historial de la Sec. 10 del Art. II de la Constitución revela que, al igual que en la Declaración Universal de los Derechos del Hombre, no se consideró hacer un reconocimiento separado del derecho a la secretividad de la comunicación telefónica, excepto por grupos minoritarios representados en la Convención. El anteproyecto original de Carta de Derechos preparado por el Presidente de la Comisión no proponía la disposición que nos ocupa. Compárese la Prop. Núm. 272, Sec. 8, con la Prop. Núm. 94, Art. II, Secs. 6 y 7, y la Prop. Núm. 103, Art. II, Secs. 12 y 13.

El informe de la Comisión de Carta de Derechos recomendó finalmente la mención separada del derecho, tal como se hacía en las proposiciones Núms. 94 y 103. La fuente utilizada por la Comisión para la estructuración del derecho fue la Ley Federal de Comunicaciones de 1934, Pub. L. 73-416, Sec. 605, 48 Stat. 1103, tal como se le interpretó en *Nardone* v. *United States*, 302 U.S. 379 (1937), y 308 U.S. 338 (1939). Veáse: J. Trías Monge, *Historia Constitucional de Puerto Rico*, San Juan, Ed. U.P.R., 1982, Vol. III, págs. 191-192.

La disposición de referencia, según se hizo constar en los debates, es una modalidad del derecho a la intimidad y debe interpretarse a su luz. De ahí que la Convención rechazase añadir a la Sec. 10 una referencia a la comunicación telegráfica. Se estimó que la Sec. 8, contentiva del derecho a la intimidad, protegía al ciudadano contra otras formas de intervención en su vida privada. 3 *Diario de Sesiones de la*

*Convención Constituyente* 1581, 1585-1586 (1952). Véanse también las expresiones de la Comisión concernida en su informe sobre la Sec. 8. 4 *Diario de Sesiones* 2566 (1952).

De los textos citados se desprende que la Convención Constituyente le otorgó altísimo rango al derecho a la intimidad y a sus componentes, tal como el derecho a la no interceptación de la comunicación telefónica. Así lo hemos reconocido en diversas ocasiones: *Figueroa Ferrer* v. *E.L.A.*, 107 D.P.R. 250, 258-263 (1978); *E.L.A.* v. *Hermandad de Empleados*, 104 D.P.R. 436, 439-440 (1975); *Cortés Portalatín* v. *Hau Colón*, 103 D.P.R. 734, 738 (1975). Tan alto es que, contrario al caso de los registros, incautaciones y allanamientos, la Convención rehusó encomendarle directamente a los tribunales la protección del derecho a la secretividad telefónica. 3 *Diario de Sesiones* 1581-1585 (1952).

Lo que no se discutió en la Asamblea Constituyente fue si la prohibición de intervenir con la comunicación telefónica es renunciable o no. Tan solo existe una vaga alusión general en el informe de la Comisión de Carta de Derechos sobre la Sec. 10, que en realidad se refiere más acertadamente a la protección contra los registros, incautaciones y allanamientos irrazonables. 4 *Diario de Sesiones* 2567-2568 (1952).

No existe el más leve indicio, sin embargo, de que la omisión respondió al deseo de erigir la Sec. 10 en muro infranqueable aun cuando las partes concernidas acepten la interceptación de sus comunicaciones. La valla en tal caso es de orden retórico. No hay colisión de derechos. El derecho a la intimidad puede renunciarse, especialmente cuando lo que impulsa la renuncia es el deseo de proteger el propio derecho de intimidad.

La renunciabilidad del derecho a la no interceptación de la comunicación telefónica se reconocía en la legislación federal que sirvió principalmente de base a la Sec. 10 del Art. II de nuestra Constitución. La citada Sec. 605 de la Ley Federal de Comunicaciones de 1934 permitía que el remi-

tente autorizase la interceptación de su teléfono. Para el tiempo de la Convención Constituyente, además, el Tribunal Supremo de Estados Unidos había resuelto que la protección brindada por la Sec. 605 era tan solo para el beneficio de los participantes en la conversación interceptada y que únicamente éstos podían objetar su uso. *Goldstein* v. *United States*, 316 U.S. 114 (1942). De ahí se derivaba que, de no objetar los participantes, era inoperante la Sec. 605.

Con posterioridad a la adopción de la Constitución del Estado Libre Asociado es que se expande en Estados Unidos la doctrina del consentimiento, para interpretar que el término "remitente" incluye al receptor de la llamada y que cualquiera de los interlocutores puede permitir válidamente la interceptación. *Rathbun* v. *United States*, 355 U.S. 107 (1957). Para la crítica de *Rathbun*, véase, F. Sullivan, *Wiretapping and Eavesdropping: A Review of the Current Law*, 18 Hastings L.J. 59, 65–66 (1966). Es interesante constatar que, aun después de *Rathbun*, la Comisión Federal de Comunicaciones adoptó un reglamento en que se requirió el consentimiento de *todas* las partes que participen en una conversación para permitir su interceptación. 31 Fed. Reg. 3400 (1966); 47 CFR 2.701(a) y 15.11(a). Véase: J. Swire, *Eavesdropping and Electronic Surveillance: An Approach for a State Legislature*, 4 Harv. J. on Legis. 23, 27–28 (1966).

El entendido contemporáneo de nuestra Constitución fue que la prohibición de intervenir la comunicación telefónica era renunciable, mas de modo expreso y por ambas partes. El Art. 3 de la Ley Núm. 66 de 10 de junio de 1953 (33 L.P.R.A. sec. 2160) dispuso:

> Ninguna persona que participe en una comunicación telefónica ni ninguna otra persona extraña a la misma, grabará ninguna comunicación telefónica mediante ningún procedimiento mecánico, ni permitirá que dicha comunicación sea oída por ninguna persona, por medio de una extensión del teléfono, o por cualquier otro medio, a no ser con el consentimiento expreso de todas las partes que intervinieren en dicha comunicación telefónica.

La misma ley contentiva de esta disposición reiteró en su Art. 1 la prohibición de la Sec. 10 del Art. II de la Constitución, a fin de imponer la pena correspondiente a su violación. 33 L.P.R.A. sec. 2158. Los Arts. 144 a 146 del Código Penal de 1974 (33 L.P.R.A. secs. 4185–4187) reiteran estos conceptos. La razón es clara. La Constitución de Puerto Rico protege la intimidad tanto del receptor como del remitente.

Nuestra legislación penal sanciona desde hace años el uso del teléfono para llamadas obscenas y otras atentatorias a la intimidad personal. Ley Núm. 76 del 6 de junio de 1968 (33 L.P.R.A. sec. 2166) y Arts. 152 y 153 del Código Penal de 1974 (33 L.P.R.A. secs. 4193 y 4194). Estas disposiciones no pueden servir de base para anular el claro significado de la norma constitucional expuesta.

En consecuencia, estimo que la Sec. 10 del Art. II de la Constitución del Estado Libre Asociado impide la interceptación de las llamadas telefónicas, a menos que medie el consentimiento expreso de todas las personas que intervengan en la conversación.

La opinión de la mayoría señala que una persona que llama por teléfono a otra con el propósito de perturbarle su tranquilidad no tiene derecho a reclamar la protección constitucional discutida y que el perjuicio que han de sufrir aquellas personas que llamen con un propósito legítimo a un teléfono interceptado es tan mínimo que debe ceder ante el interés de proteger la tranquilidad de quien recibe llamadas obscenas o amenazantes. Como hemos visto, la Sec. 10 del Art. II de la Constitución no considera excepción alguna. Su mandato es claro. Una persona que llama a otra por teléfono tiene derecho a estar libre de interceptación en todo momento. La opinión del Tribunal ha establecido una excepción a una de las disposiciones más claras de nuestra Constitución. Se ha abierto peligrosamente una puerta que no sabemos cómo habrá de ser utilizada en el futuro.

Existe otro problema que la opinión de la mayoría no ha

podido enfrentar de forma satisfactoria. En nuestro país no existe estatuto alguno que autorice la interceptación telefónica. Por el contrario, el Código Penal[1] la prohíbe y no prescribe ninguna excepción a tal prohibición.

El resultado que exige nuestra Constitución no deja desamparado al ciudadano hostigado por llamadas ofensivas a su intimidad. La Asamblea Legislativa puede establecer algún método para determinar el origen de las llamadas ofensivas sin que tenga que violentarse la Constitución. Además, como remedio interino, el ciudadano que recibe las llamadas ofensivas tiene derecho a que se altere el número de su teléfono y se le imparta carácter privado. Reconozco que el remedio puede ser inaceptable al usuario en ciertas circunstancias, dato que la Asamblea Legislativa indudablemente tomará en cuenta al enfrentarse a este asunto. Por último, es cierto que el derecho a la intimidad goza de tan alta jerarquía en nuestro ordenamiento jurídico que no hemos vacilado en ocasiones en recalcar su valor en ausencia de legislación habilitadora o en presencia de legislación estatal limitante o ante el choque con ciertos otros derechos. *Figueroa Ferrer*, supra, págs. 277–278; *Pueblo* v. *Duarte Mendoza*, 109 D.P.R. 596, 599 (1980); *Hermandad de Empleados*, supra, pág. 440; *Sucn. de Victoria* v. *Iglesia Pentecostal*, 102 D.P.R. 20, 22 (1974); *Torres* v. *Rodríguez*, 101 D.P.R. 177, 183–184 (1973). Los casos de autos presentan, no obstante, situaciones distintas. La jurisprudencia citada, junto a otras sentencias análogas, responde a hechos diferentes y a teorías de adjudicación de otra índole. Esos casos ilustran generalmente la disposición de este Tribunal

---

[1] El Art. 144 del Código Penal dispone:

"Toda persona que con el fin de enterarse o de permitir que cualquiera otra se entere de una comunicación privada verbal, bien sea comunicación telefónica o por cualquier otro medio dirigida a un tercero, conecte, instale o utilice cualquier aparato o mecanismo, o cualquier otro modo, será sancionada con pena de reclusión, por un término fijo de dos (2) años. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de tres (3) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de un (1) año."

a defender el derecho o cuando los otros poderes del gobierno lo recortan o se niegan a legislar para reconocerlo en su verdadera dimensión. En los casos de autos, por el contrario, no se trata de proclamar una vez más la extraordinaria importancia del derecho a la intimidad. Eso no se discute. Tampoco se trata de sopesar el derecho a la intimidad frente a otros valores. No hay choque aquí entre el derecho a la intimidad y otros órdenes de intereses. La pugna es únicamente entre diversas manifestaciones del derecho a la intimidad. La tarea ante nosotros consiste en la reconciliación de esas manifestaciones. Tampoco se trata aquí de defender un derecho mal entendido o ignorado por otros poderes gubernamentales. El problema que se nos plantea es la selección de la tecnología para proteger tanto la intimidad de los receptores de comunicaciones como de sus remitentes. No ha habido negativa a legislar. Las circunstancias particulares del problema planteado por los recursos bajo análisis requieren soluciones para cuya formulación es preferible acudir en primer término al Poder Legislativo.

Por las razones expuestas, revocaría la resolución recurrida.