TELENOTICIAS, TELEMUNDO DE PUERTO RICO, *Ex parte*.

*Número:* MC-2016-430      *Resuelto:* 6 de mayo de 2016

*Margarita Mercado Echegaray*, procuradora general, y *Mónica Cordero Vázquez*, procuradora general auxiliar; *Walter M. Soto León*, abogado de la parte peticionaria; *Roberto A. Cámara Fuertes* y *Jaime Mercado Almodóvar*, abogados de GFR Media LLC, en solicitud especial.

## RESOLUCIÓN

A la Petición Especial de Autorización para el Uso de Cámaras y Equipo Audiovisual para la Transmisión y Grabación de la Vista Preliminar contra Luis G. Rivera Seijo, presentada por Telenoticias, Telemundo de Puerto Rico, *se provee "ha lugar"*.

Este proceso se regirá por lo provisto en el Reglamento del Programa Experimental para el Uso de Cámaras Fotográficas y de Equipo Audiovisual de Difusión por los Medios de Comunicación en los Procesos Judiciales, según enmendado (Reglamento). Véanse: *In re Enmdas. Regl. Uso*

*Cámaras Proc. Jud.* 193 DPR 475 (2015); *In re C. 15; Regl. Uso Cámaras Proc. Jud.*, 188 DPR 424 (2013).

En específico, recalcamos que se observarán estrictamente las restricciones contenidas en la Regla 8 del citado Reglamento, a saber:

(a) La cobertura electrónica mediante el uso de cámaras fotográficas de equipo audiovisual de difusión estará prohibida en todo procedimiento de naturaleza confidencial, según establecido por ley o así dispuesto por orden judicial.

(b) La cobertura electrónica de un proceso judicial, porciones de este o del testimonio de una parte, una persona testigo o una persona perita puede prohibirse, concluirse o limitarse *motu proprio* por la jueza o el juez que preside el proceso o a instancia de parte. La jueza o el juez efectuará su determinación tomando en consideración el interés de la justicia en proteger los derechos de las partes y de las personas testigos, y para preservar el orden y la buena conducta que debe imperar en el proceso judicial.

(c) El juez o la jueza podrá ordenar en cualquier momento a los medios de comunicación que suspendan el uso de cámaras fotográficas y de equipo audiovisual de difusión, o podrá conducir el procedimiento en cámara, para evitar la difusión de la presentación en evidencia de cualquier documento o testimonio de naturaleza confidencial o sensitiva.

(d) No se autorizará la cobertura electrónica de los procedimientos celebrados en cámara ni tomas de video o de fotografía cercanas al rostro (*close-ups*) de cualquiera de los participantes en un procedimiento judicial con cobertura electrónica.

(e) Solo se permitirá la transmisión en vivo o en directo de cualquier etapa de las vistas del proceso judicial por radio, televisión e Internet o por algún medio de transmisión análogo mediante la autorización expresa del tribunal, previa solicitud específica al respecto y siempre que no se afecten los procedimientos, los derechos de las partes ni el acceso del público y de las funcionarias o de los funcionarios a la sede del tribunal.

(f) No se permitirá realizar entrevistas para la difusión ni tomar fotografías en los pasillos adyacentes a la entrada del salón donde se lleva a cabo el procedimiento o donde se efectúen otros procesos judiciales. Solo se permitirán en las áreas designadas para ello, que deben ser áreas retiradas de las entradas a los salones del tribunal (por ejemplo, en áreas cercanas a los elevadores o al final de los pasillos), ello de conformidad con la directriz u orden administrativa que regule el asunto.

Se dispone, además, que la transmisión de la vista se regirá según el procedimiento dispuesto a continuación.

La grabación y transmisión en vivo de la vista preliminar en alzada se hará a través de un sistema portátil que la Oficina de Prensa de la Oficina de Administración de los Tribunales adquirió para este tipo de transmisión. Este sistema permite la instalación de cámaras de video en las salas de los tribunales y la transmisión remota de las imágenes captadas por éstas a los distintos medios de comunicación. El Director de la Oficina de Prensa, el Sr. Daniel Rodríguez León, estará encargado de coordinar todo lo relacionado con la transmisión en vivo de la vista preliminar en alzada mediante este sistema remoto. Todos los interesados deberán coordinar con el señor Rodríguez León para obtener acceso remoto a la transmisión en vivo de la vista.

Por otra parte, para asegurar la solemnidad y el decoro del proceso judicial, se permitirá la entrada de cámaras de fotografía operadas por representantes de los medios de prensa escrita o digital (Internet). Para regular el uso de cámaras fotográficas extendemos, de forma excepcional, el Reglamento, según enmendado, a los gremios periodísticos, quienes deberán regirse por las disposiciones pertinentes del antedicho Reglamento siempre y cuando no sean contrarias o incompatibles con lo aquí dispuesto. No se permitirá tomar fotografías mediante el uso de equipo electrónico adicional alguno.

También se permitirá, sujeto a las restricciones impuestas en el Canon 15 de Ética Judicial, 4 LPRA Ap. IV-B, y en el Reglamento:

1. El uso de grabadoras de audio portátiles, sujeto a que su operación sea discreta y silenciosa.

2. El uso de computadoras portátiles, teléfonos celulares, tabletas, entre otros dispositivos electrónicos o equipo similar, *para recopilar y transmitir información escrita* a través de Internet, siempre que no interfiera con el proceso

judicial, que su operación sea silenciosa y discreta, y que *no se utilicen para fotografiar, grabar imágenes o audio, para radiodifundir ni para televisar.*

Recordamos a los medios de comunicación que, por la solemnidad del proceso judicial, deben ceñirse estrictamente a las disposiciones aplicables del Reglamento y a lo aquí dispuesto.

Reiteramos que, en conformidad con la Regla 13 del citado Reglamento, el juez o la jueza que presida el proceso resolverá, según su sana discreción, cualquier controversia o aspecto no previsto en el Reglamento.

Se instruye al Director de Prensa de la Oficina de Administración de los Tribunales que brinde el apoyo técnico y logístico necesario para garantizar el cumplimiento de las normas reglamentarias aplicables.

*Notifíquese inmediatamente por teléfono, facsímil y por la vía ordinaria.*

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez emitió un Voto particular de conformidad, al cual se unieron los Jueces Asociados Señores Kolthoff Caraballo y Estrella Martínez. El Juez Asociado Señor Estrella Martínez estuvo conforme con la determinación del Tribunal e hizo constar la expresión siguiente:

> Estoy conforme con la determinación emitida por este Tribunal. Reitero que por bien del interés público, de las partes involucradas y del propio sistema judicial, resulta imperativo conceder la petición de la prensa para transmitir el proceso penal en cuestión. Sostengo que ello abonará a la transparencia y accesibilidad necesaria que debe caracterizar al Poder Judicial y a la confianza del Pueblo en sus instituciones. Véanse: Voto particular disidente del Juez Asociado Señor Estrella Martínez en *Telenoticias, Telemundo PR, Ex parte I*, 195 DPR 34, 37 (2016); Voto particular disidente del Juez Asociado Señor Estrella Martínez en *Televicentro of PR, LLC, Ex parte*, 195 DPR 18, 29 (2016); Voto particular del Juez Asociado Señor Estrella Martínez en *In re Enmdas. Regl. Uso Cámaras Proc. Jud.*, 193 DPR 475 (2015); Voto particular disidente del Juez Asociado

Señor Estrella Martínez en *ASPRO, Ex parte*, 192 DPR 961 (2015); Voto particular de conformidad del Juez Asociado Señor Estrella Martínez en *ASPRO et al., Ex parte*, 192 DPR 395 (2015); Voto particular de conformidad del Juez Asociado Señor Estrella Martínez en *ASPRO et al., Ex parte*, 191 DPR 490 (2014); Voto particular de conformidad del Juez Asociado Señor Estrella Martínez en Solicitud *ASPRO et al., Ex parte II*, 190 DPR 184 (2014); Voto particular disidente del Juez Asociado Señor Estrella Martínez en *ASPRO et al., Ex parte I*, 190 DPR 82 (2014); Voto particular de conformidad del Juez Asociado Señor Estrella Martínez en *ASPRO et al., Ex parte I*, 189 DPR 769 (2013); Voto particular de conformidad del Juez Asociado Señor Estrella Martínez en *In re C. 15; Regl. Uso Cámaras Proc. Jud.*, 188 DPR 424 (2013).

El Juez Asociado Señor Rivera García proveería "no ha lugar" e hizo constar la siguiente expresión, a la cual se unió la Jueza Asociada Señora Pabón Charneco:

Es mi criterio que una vista preliminar en alzada queda fuera del alcance del Reglamento del Programa Experimental para el Uso de Cámaras Fotográficas y de Equipo Audiovisual de Difusión por los Medios de Comunicación en los Procesos Judiciales. Por otra parte, disiento por los mismos fundamentos que expuse en mi voto particular de conformidad en parte y disidente en parte en *In re Enmdas. Regl. Uso Cámaras Proc. Jud.*, 193 DPR 475 (2015), en referencia a las salas de asuntos criminales.

La Juez Asociada Señora Rodríguez Rodríguez no intervino.

*(Fdo.)* Juan Ernesto Dávila Rivera
*Secretario del Tribunal Supremo*

— O —

Voto particular de conformidad emitido por la Jueza Presidenta Oronoz Rodríguez, al cual se unen el Juez Asociado Señor Kolthoff Caraballo y el Juez Asociado Señor Estrella Martínez.

Hace solo unas semanas estuvo ante nuestra consideración la solicitud de uno de los medios de prensa televisiva

del País para transmitir los procedimientos en la vista preliminar del caso contra el Sr. Luis G. Rivera Seijo, acusado por la muerte del niño Lorenzo González Cacho. En aquel momento me vi obligada a disentir, luego de que una mayoría de los miembros de este Tribunal denegara la petición y descartara la oportunidad de fortalecer nuestro compromiso con la mayor apertura de los procedimientos judiciales y la transparencia.[1]

Hoy estoy conforme con la determinación tomada por este Tribunal de permitir la transmisión de la vista preliminar en alzada de ese mismo caso. Estoy convencida de que las circunstancias excepcionales de este caso requieren que declaremos "con lugar" la petición. No hay impedimento para que así sea, ya que nuestro ordenamiento jurídico provee los mecanismos y la Rama Judicial cuenta con el equipo y la infraestructura para permitir la transmisión del proceso y proteger los derechos de las partes involucradas.

Debo repetirlo, se trata de uno de los casos que más interés público ha despertado en los últimos años, no solo por los terribles hechos que lo originaron, sino además por el accidentado trámite que ha seguido. Dicho trámite, sumado a la proliferación de toda clase de información reproducida a lo largo de seis años, ha propiciado el desconcierto y el escepticismo en la ciudadanía. Frente a semejante panorama, no debe extrañar el gran interés que tiene el País en conocer las incidencias del caso *Pueblo v. Luis G. Rivera Seijo*, DVP 2016-0291, sin más intermediarios que sus propios sentidos y su consciencia.

Sin duda, los reportajes de la prensa juegan un papel muy importante a la hora de transmitir lo que acontece dentro de una sala de justicia. Sin embargo, como parte del derecho a la libre expresión, todos los ciudadanos tienen derecho a acceder por ellos mismos y presenciar el proceso. A pesar de ello, la posibilidad real de ejercer este derecho es en

---

[1] Véase *Televicentro of PR, LLC, Ex parte*, 195 DPR 18, 21 (2016), Voto particular disidente de la Jueza Presidenta Oronoz Rodríguez.

muchos casos una ficción debido a la dificultad que implica abandonar los asuntos acuciantes del diario vivir. Precisamente por eso fue que en el 2013 enmendamos el Canon XV de Ética Judicial, 4 LPRA Ap. IV-B, y aprobamos el Programa Experimental para el Uso de Cámaras Fotográficas y de Equipo Audiovisual de Difusión por los Medios de Comunicación en los Procesos Judiciales (PECAM).[2]

La ciudadanía exige de sus instituciones mayor transparencia. Este caso es el mejor ejemplo de ello. La sala donde se realizó la vista preliminar estuvo llena todos los días en que allí hubo sesión. Tanto así, que muchos de los que llegaron al tribunal no pudieron entrar, situación que generó confusión y que incluso llevó, lamentablemente, al amontonamiento de ciudadanos en los pasillos. Estoy segura de que esto no habría pasado si hubiéramos facilitado en aquel momento el acceso por medio de la transmisión audiovisual y electrónica de los procedimientos.

Por otro lado, la apertura de las salas es compatible con el derecho de todo acusado a un debido proceso de ley y a un juicio justo e imparcial. Garantizar esos derechos es nuestro deber y prioridad. Por eso, todas las iniciativas que se han tomado para fomentar el acceso a través de proyectos como el PECAM tienen como premisa la centralidad de los derechos de las partes. Es por esta razón que hemos incluido en el Reglamento del PECAM los mecanismos que permiten balancear los intereses de todas las partes.

---

[2] Cabe mencionar que, en vista de los resultados positivos del Programa Experimental para el Uso de Cámaras Fotográficas y de Equipo Audiovisual de Difusión por los Medios de Comunicación en los Procesos Judiciales (PECAM), el 15 de julio de 2015 enmendamos el Reglamento para extender la aplicación de dicho Programa a la Sala 901 de Asuntos de lo Civil y a la Sala 1104 de Asuntos de los Criminal en el Centro Judicial de San Juan. En aquella ocasión emití un Voto Particular de Conformidad por entender que la entrada de cámaras a un sala judicial

"[...] permiten que la ciudadanía tenga acceso de primera mano al funcionamiento de su sistema de justicia. Sin este tipo de acceso, quienes nunca han acudido a los tribunales están sujetas a las impresiones que le transmitan terceras personas —impresiones que no siempre se ciñen a la realidad de los procesos y a lo acontecido en las salas—, así como a las concepciones erróneas que suelen predominar acerca del proceso judicial". *In re Enmdas. Regl. Uso Cámaras Proc. Jud.*, 193 DPR 475, 513 (2015), Voto particular de conformidad.

Así, por ejemplo, el juez o la jueza que preside tiene facultad para limitar la cobertura de cualquier parte del proceso, incluyendo la suspensión de la transmisión. Estas herramientas se extienden, entre otras medidas, para prohibir que se enfoque a los testigos, la transmisión de declaraciones sensitivas, requerir la alteración de la voz y otras salvaguardas que provee la tecnología.

Tampoco es excusa que el PECAM no se haya extendido a salas fuera del Centro Judicial de San Juan ni a la etapa de vista preliminar en alzada. La Regla 15 del Reglamento del PECAM permite, por excepción, la cobertura y transmisión de procedimientos como el presente. Véase *In re Enmdas. Regl. Uso Cámaras Proc. Jud.*, 193 DPR 475, 479 (2015). Como dije, si hay un caso verdaderamente excepcional, en el que urja utilizar los mecanismos a nuestra disposición para cumplir el cometido de mayor acceso y transparencia, tiene que ser éste.

Confío plenamente en la capacidad, el profesionalismo y la ética de quienes componen la Rama Judicial. Sin embargo, el pueblo tiene derecho a poderlo constatar por sí mismo, a estar informado y a observar el desarrollo de los procedimientos. Esto no solo es esencial para solidificar la confianza, sino que ayuda a despejar la confusión, la inquietud y el escepticismo que han rodeado este caso. Más aún, se trata de uno de los pilares sobre el que se asienta nuestro sistema democrático de gobierno.

Al permitir la transmisión de esta vista preliminar en alzada, una mayoría de este Tribunal valientemente aprovecha la oportunidad de poner en práctica, en una coyuntura apremiante, los propósitos que motivaron la adopción de este programa; esto es, el acceso de la ciudadanía a los procesos judiciales.

Por todo lo anterior, estoy conforme.