EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Miguel Ocasio Santiago<br><br>Recurrido | Certiorari<br><br>2021 TSPR 64<br><br>206 DPR ____ |

Número del Caso:  CT-2021-8

Fecha: 10 de mayo de 2021

Materia:  Sentencia del Tribunal con Opiniones Disidentes.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

      v.                      CT-2021-0008

Miguel Ocasio Santiago

    Recurrido

SENTENCIA
(Regla 50)

En San Juan, Puerto Rico, a 10 de mayo de 2021.

Nos corresponde resolver si debemos divulgar el audio de las vistas de un caso que se llevó a cabo en una sala especializada de violencia doméstica. Por ello, certificamos el asunto de epígrafe y concluimos que los procesos en las salas de violencia doméstica son de naturaleza sensible que requieren por ley de un acceso controlado y, por ello, no son compatibles con la posibilidad de que posteriormente la grabación se haga pública, aunque sea de manera suprimida o limitada, independientemente de quién lo solicite. Es un contrasentido que un proceso sea de acceso controlado, por mandato de ley, pero se pueda repartir

el audio de ese mismo proceso, en todo o en parte, para acceso de todo el mundo.

I

Los siguientes hechos no están en controversia y son de conocimiento público, por lo que tomamos conocimiento judicial de ellos. Regla 201 de Evidencia, 32 LPRA Ap. VI. Véase, también, UPR v. Laborde Torres y otros I, 180 DPR 253, 276-279 (2010).

El 3 de mayo de 2021, el juez administrador de la Región Judicial de Caguas, Hon. Ricardo G. Marrero Guerrero, emitió una Orden Protectora en la que prohibió, bajo apercibimiento de desacato, escuchar o divulgar el contenido de las grabaciones de las vistas del caso Pueblo v. Miguel Ocasio Santiago, Núm. CG2021CR00724 Rel: OPA 2021011403.

El 5 de mayo de 2021, el Overseas Press Club presentó ante nos una Solicitud urgente y especial, en la que solicitó que ordenáramos "la divulgación a la prensa general activa las grabaciones de las vistas celebradas en torno al caso del Pueblo de Puerto Rico vs. Miguel Ocasio Santiago, Núm. de Caso: CG2021 CR00274, Rel: OPA 2021011403, por [sic] el Art. 3.1 de la Ley 54, así como cualquier documento o material audiovisual relacionado al mismo". Solicitud urgente y especial del Overseas Press Club, pág. 4.

El día siguiente, mediante Resolución, denegamos la solicitud de divulgación que presentó el Overseas Press Club. Como parte de los fundamentos para dicha denegatoria expresamos:

>En la balanza de intereses presentes en esta solicitud de información, **el mandato de ley para salvaguardar la confidencialidad de los procesos, como protección para las víctimas de violencia doméstica, pesa más que el interés de la prensa de tener acceso a información confidencial**. También consideramos en nuestro análisis que está pendiente un proceso penal relacionado y la solicitud de información sin que el imputado sea parte podría incidir sobre su derecho a un proceso imparcial y justo. Ex Parte: Overseas Press Club, 2021 TSPR 62, pág. 2 (Resolución) (Énfasis suplido).

Luego, el 7 de mayo de 2021, la Asociación de Periodistas de Puerto Rico (ASPPRO) presentó una *Moción de solicitud de regrabación* en el Tribunal de Primera Instancia, Sala Superior de Caguas. En síntesis, solicitó la divulgación de los procesos judiciales celebrados durante los días 25, 26 y 31 de marzo de 2021 en el caso Pueblo v. Miguel Ocasio Santiago, supra. En su petitorio, la ASPPRO arguyó que su solicitud se distingue de lo resuelto por este Tribunal en Ex Parte: Overseas Press Club, supra, porque ahora se solicita que de las grabaciones se eliminen las partes sensitivas del testimonio de la joven Andrea Ruiz Costas. Además, enfatizan que los familiares de Ruiz Costas se han expresado públicamente a favor de la divulgación del audio. En respuesta, el foro primario señaló una vista para el 11 de mayo de 2021, a las 9:30 a.m., en la Sala 301 del Centro Judicial de Caguas.

II

A. Recurso de certificación intrajurisdiccional

La certificación intrajurisdiccional es un mecanismo procesal discrecional, **que podemos expedir por iniciativa**

**propia** o a solicitud de parte, para elevar inmediatamente a la consideración de este Tribunal cualquier asunto pendiente ante el Tribunal de Primera Instancia o el Tribunal de Apelaciones. Regla 52.2(d) de Procedimiento Civil, 32 LPRA Ap. V. Véanse, además, Art. 3.002 de la Ley Núm. 201-2003, conocida como la Ley de la Judicatura de Puerto Rico de 2003, 4 LPRA sec. 24s(f); Regla 24 del Reglamento del Tribunal Supremo, 4 LPRA Ap. XXI-B. Véase, también, R. Hernández Colón, Práctica jurídica de Puerto Rico: Derecho procesal civil, 6ta ed., San Juan, Ed. LexisNexis, 2017, Sec. 5623, pág. 574. Hemos utilizado este mecanismo "para atender asuntos que requieren urgente solución, ya sea porque se afecta la administración de la justicia o porque el asunto es de tal importancia que exige una pronta atención". Pierluisi-Urrutia v. Comision Estatal de Elecciones, 204 DPR 841, 854 (2020), citando a PIP v. ELA et al., 186 DPR 1, 9 (2012).

Ahora bien, debido al carácter extraordinario y discrecional, al momento de evaluar este tipo de recurso, debemos analizar los siguientes factores: (1) si se plantean cuestiones de interés público que podrían incluir asuntos sustanciales al amparo de la Constitución de Puerto Rico o los Estados Unidos; (2) la etapa en que se encuentra el caso; (3) la urgencia y complejidad de la controversia y (4) la necesidad que pueda existir de presentar prueba. Rivera Schatz v. ELA y C. Abo. PR II, 191 DPR 791, 849 (2014). La presente controversia cumple con todos los criterios.

En primer lugar, la controversia ante nuestra consideración está cobijada por el más alto interés público al estar en juego el derecho a la intimidad y dignidad de todo ser humano -en nuestro caso de las víctimas de violencia doméstica dentro de los procedimientos judiciales- consagrado en nuestra Constitución. Véase, Const. P.R., Art. II, Sec. 1 y Sec. 8, LPRA, Tomo 1. Segundo, el recurso se encuentra en una etapa de fácil disposición. Tercero, la presente controversia se tiene que resolver de forma urgente debido a la posibilidad de que se contravenga la ley y se cree un precedente nefasto para la protección de la intimidad de las víctimas de violencia doméstica. Cuarto y, por último, la controversia ante nos no requiere que se presente prueba. Con la mera aplicación del derecho se dispone de ella.

B. Derecho a la intimidad y el acceso a la información en casos de violencia doméstica

Las Secs. 1 y 8 del Art. II de la Constitución de Puerto Rico, <u>supra</u>, protegen el derecho fundamental a la intimidad y dignidad de las personas. En lo pertinente, la Sec. 8 de la Carta de Derechos dispone que "[t]oda persona tiene derecho a [la] protección de [la] ley contra ataques abusivos a su honra, a su reputación y a su vida privada o familiar". Por su parte, la Sec. 1 del Art. II de la Constitución, <u>supra</u>, establece que "[l]a dignidad del ser humano es inviolable".

Conforme a lo anterior, hemos expresado que "el derecho a la intimidad, componente del derecho a la personalidad,

goza de la más alta protección bajo nuestra Constitución y constituye un ámbito exento capaz de impedir o limitar la intervención de terceros". <u>López Tristani v. Maldonado</u>, 168 DPR 838, 849 (2009).

En <u>Arroyo v. Rattan Specialties, Inc.</u>, 117 DPR 35, 58-59 (1986), expresamos:

> En relación con la Sec. 1, el Informe de la Comisión de la Carta de Derechos rendido a la Convención Constituyente indicó que '[e]l propósito de esta sección es fijar claramente como base consustancial de todo lo que sigue el principio de la dignidad del ser humano'. Sobre la Sec. 8 se dijo que '**[s]e trata de la inviolabilidad personal en su forma más completa y amplia [y que e]l honor y la intimidad son valores del individuo que merecen protección cabal, no sólo frente a atentados provenientes de otros particulares, sino también contra ingerencias abusivas de las autoridades**. La fórmula propuesta en la sección 8 cubre ambos aspectos... La inviolabilidad de la persona se extiende a todo lo que es necesario para el desarrollo y expresión de la misma'. (Énfasis suplido).

De igual forma, en <u>P.R. Tel. Co. v. Martínez</u>, 114 DPR 328, 339 (1983), al discutir la primacía del derecho a la intimidad en nuestro sistema jurídico, expresamos:

> Tan trascendental es este derecho en nuestra sociedad que, en las ocasiones en que se ha contrapuesto a otros de similar jerarquía, ha salido airoso del careo constitucional. Así, por ejemplo, ha prevalecido ante los siguientes derechos fundamentales: **de libre expresión**, <u>Hermandad de Empleados</u>, <u>supra</u> [<u>E.L.A. v. Hermandad de Empleados</u>, 104 DPR 436 (1975)] (piquete frente a la residencia del Secretario del Trabajo); **de libertad de culto**, <u>Sucn. de Victoria</u>, <u>supra</u> [<u>Sucn. de Victoria v. Iglesia Pentecostal</u>, 102 DPR 20 (1974)] (servicios religiosos que trascendían al vecindario); **y de propiedad**, <u>Torres v. Rodríguez</u>, 101 DPR 177 (1973) (establecimiento de funeraria en

zona residencial). También ha predominado frente a la legislación limitante de la decisión de los cónyuges que por mutuo acuerdo optan por terminar su matrimonio. Figueroa Ferrer, supra [Figueroa Ferrer v. ELA., 107 DPR 250 (1978)]. (Énfasis suplido).

Por otro lado, el legislador proveyó en el Art. 5.005 de la Ley de la Judicatura de 2003, supra, una protección adicional a la intimidad de las víctimas de violencia doméstica, al ordenar la creación de salas especializadas **"para atender con acceso controlado al público los casos de violencia doméstica en todas las regiones judiciales"**. (Énfasis suplido). Al leer el precitado artículo queda claro que cuando el legislador ordenó controlar el acceso al público, revistió de confidencialidad los asuntos que se discuten en las salas especializadas sobre violencia doméstica.

Ahora bien, hemos expresado que en nuestro sistema se garantiza jurisprudencialmente el derecho del pueblo y de la prensa al acceso a información de carácter público. Engineering Services International, Inc. v. Autoridad de Energía Eléctrica de Puerto Rico, 205 DPR _____, 2020 TSPR 103, 105 (2020). No obstante, ese acceso público cede cuando: (1) **una ley lo declara así;** (2) la comunicación está protegida por alguno de los privilegios evidenciarios que pueden invocar los ciudadanos; (3) **revelar la información puede lesionar los derechos fundamentales de terceros;** (4) se trate de la identidad de un confidente, y (5) sea "información oficial" conforme a la Regla 514 de Evidencia

de 2009, 32 LPRA Ap. VI. (Énfasis suplido). <u>Bhatia Gautier v. Gobernador</u>, 199 DPR 59, 82-83 (2017).

No cabe duda del interés legítimo de la prensa en obtener información sobre los casos que se ventilan en los tribunales, en especial a los que tienen que ver con el mal social que nos estremece: la violencia doméstica. No obstante, tal como expresamos en <u>Ex Parte: Overseas Press Club</u>, <u>supra</u>, en la balanza de intereses, el deseo de la prensa de tener acceso a información confidencial sobre los procesos judiciales relacionados con asuntos de violencia doméstica cede ante la protección a la confidencialidad y el derecho a la intimidad que tiene toda futura víctima. Véanse, Const. P.R., Art. II, Sec. 8, <u>supra</u>; Art. 5.005 de la Ley de la Judicatura de 2003, <u>supra</u>.

No existe distinción entre la solicitud de la ASPPRO y lo resuelto por este Tribunal la semana pasada en <u>Ex Parte: Overseas Press Club</u>, <u>supra</u>. En primer lugar, la determinación a la que llegamos entonces y hoy reafirmamos no se circunscribe al caso de la joven Ruiz Costas. Todo lo contrario. **Llegamos a ella, primero, porque así la ley lo impone y, segundo, para evitar crear un precedente nefasto que sirva para desalentar y cohibir a las futuras víctimas de violencia doméstica de que busquen protección en nuestros tribunales.** Eliminar las partes sensitivas o íntimas del audio no salvaguarda el mandato de confidencialidad que la ley le revierte a estos asuntos. Por el contrario, abriría el debate de qué es sensitivo o íntimo y qué no lo es. **La**

**víctima de violencia doméstica que acude al tribunal en busca de ayuda no debe enfrentar el temor de que la grabación de lo que se vierta en ese proceso pueda ser divulgado a cualquier persona o medio, en todo o en parte, para compartirlo con el público en general. Esto es precisamente lo que la ley pretende evitar.**

Cuando compartimos nuestra determinación en <u>Ex parte: Overseas Press Club</u>, <u>supra</u>, tomamos todos esos escenarios en cuenta y sopesamos todas esas posibilidades. Sin embargo, llegamos a una sola conclusión: estos procesos, por su naturaleza sensible -que requieren por ley de un acceso controlado- no son compatibles con la posibilidad de que posteriormente la grabación se haga pública aunque sea de manera suprimida o limitada, independientemente de quién lo solicite. Todos queremos respuestas, pero en el afán de que alguien responda no podemos permitir tan nefasto precedente. La inminencia de la vista que señaló el Tribunal de Primera Instancia nos obliga a resolver de inmediato, prescindiendo de todo trámite ordinario.

En algunas ocasiones las controversias contienen aspectos que trascienden el remedio solicitado por las partes. Esta es una de esas ocasiones. No podemos actuar a base de meras conveniencias, deseos o simpatías. La ética judicial prohíbe que los jueces actúen "por el clamor público, [ni] por consideraciones de popularidad o notoriedad...". Canon 8 de Ética Judicial, 4 LPRA Ap. IV-B. Como intérpretes máximos de la Constitución y la ley,

intervenimos hoy para proteger y sostener los efectos de nuestro dictamen de la semana pasada en Ex parte: Overseas Press Club, supra, y tomamos esta decisión con el fin expreso de proteger la vida, la seguridad, la dignidad y la intimidad de las futuras víctimas de violencia doméstica.

Ahora bien, debemos dejar meridianamente claro que lo resuelto hoy nada tiene que ver con la investigación que está llevando a cabo la Oficina de Administración de los Tribunales (OAT) sobre lo acontecido en las vistas en controversia. Confiamos que finalizada la investigación, **se divulguen los hallazgos junto con las medidas correctivas adecuadas que puedan recomendarse**. No obstante lo anterior, y como hemos señalado en el pasado, **advertimos que todo ciudadano que considere que la actuación de un juez o jueza se ha basado en consideraciones ajenas al ordenamiento jurídico, tiene disponible el procedimiento que a esos fines proveen las Reglas de Disciplina Judicial**, 4 LPRA Ap. XV-B.

III

Por todo lo anterior, se expide el auto de certificación para traer ante la consideración de este Tribunal el caso Pueblo v. Miguel Ocasio Santiago, Núm. CG2021CR00724. Conforme con la Regla 50 del Reglamento del Tribunal Supremo, 4 LPRA Ap. XXI-B, prescindimos de todo procedimiento ulterior y debido a la naturaleza urgente de la solicitud de la ASPPRO, así como para salvaguardar la efectividad de nuestro dictamen en Ex parte: Overseas Press Club, supra, resolvemos que no procede la solicitud de información que presentó la referida

asociación y proveemos no ha lugar a esta. Por consiguiente, se deja sin efecto la vista que el Tribunal de Primera Instancia señaló para mañana martes. Resuelto este asunto, se devuelve el caso a ese foro para que continúen los procedimientos de forma compatible con lo resuelto aquí.

Notifíquese inmediatamente.

Lo acordó el Tribunal y lo certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez disiente y emitió Opinión Disidente. El Juez Asociado señor Estrella Martínez disiente y emitió Opinión Disidente. El Juez Asociado señor Colón Pérez disiente y emitió Opinión Disidente.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Miguel Ocasio Santiago<br><br>Recurrido | CT-2021-08 |

La Jueza Presidenta ORONOZ RODRIGUEZ emitió una Opinión disidente.

En San Juan, Puerto Rico, a 10 de mayo de 2021.

Reitero: hay que divulgar las grabaciones solicitadas y hay que hacerlo ya. Si bien nadie puede devolver la vida a Andrea Ruiz Costas, nuestra actuación a favor de la transparencia arrojaría luz sobre lo que aconteció cuando acudió a nuestros tribunales. Estoy convencida que ello es un primer paso indispensable para recobrar la fe y la confianza en los procedimientos judiciales para proteger las víctimas de violencia de género.

I

El artículo 3.002 de la Ley de la Judicatura de Puerto Rico, 4 LPRA sec. 24s(f), dispone que podremos traer a nuestra atención asuntos pendientes ante el Tribunal de Primera Instancia cuando se planteen: (1) conflictos entre decisiones previas del Tribunal de Apelaciones, (2) cuestiones noveles de derecho o (3) cuestiones de alto interés público que incluyan cualquier cuestión

constitucional sustancial al amparo de la Constitución de Puerto Rico o de Estados Unidos. Asimismo, hemos establecido que "es un recurso de carácter excepcional porque la norma preferida en nuestro ordenamiento es que los casos maduren durante el trámite ordinario para evitar así que el foro de última instancia se inmiscuya a destiempo". UPR v. Laborde Torres y otros, 180 DPR 253, 272 (2010). Además, es un recurso que nos permite atender asuntos que de otra manera pudieran evadir nuestros pronunciamientos. Íd., pág. 273.

Evaluados los criterios que nos permiten certificar intrajurisdiccionalmente una controversia pendiente ante un foro inferior vemos que no se cumplen. Ciertamente, estamos ante un asunto de alto interés público que involucra un tema novel. No obstante, por ser el foro de última instancia, este Tribunal debe abstenerse de intervenir en asuntos que aún requieren madurar en los tribunales inferiores.

Es sorprendente y preocupante la forma en que, a puertas cerradas, este Tribunal cambió su postura jurisdiccional sobre este asunto. El Tribunal tuvo la oportunidad de expedir y expresarse en el caso previo Ex Parte Overseas Press Club de Puerto Rico, MC-2021-59. No obstante, una Mayoría optó por denegar la solicitud que presentó la parte peticionaria en aquel momento y expresó que **este no era el foro adecuado para solicitar la información.** Así, **hicieron alusión a que las grabaciones en controversia se debieron pedir en el foro primario.** Ahora, increíblemente, la mayoría de los Jueces de esta Curia, contrario a las disposiciones legales que le

confieren jurisdicción a este foro, certifican un caso criminal, que ya culminó, con la única intención de que no se divulguen las grabaciones.

Podemos tomar conocimiento judicial de que el Poder Ejecutivo, por vía del Ministerio Público, y el Gobernador se ha expresado a favor de la divulgación de las grabaciones. También el Poder Judicial, a través de la Oficina de Administración de Tribunales, favoreció la divulgación. Asimismo, se ha expresado a favor de la divulgación la familia de Andrea Ruiz Costas, quien --sin duda-- es parte interesada en proteger los derechos de ésta. Cabe preguntarse, ¿por qué una Mayoría de los Jueces del Tribunal Supremo insiste en ocultarle al Pueblo las grabaciones? Con el proceder de hoy, y como ha sido tendencia de este Tribunal hace ya un tiempo, se sienta un precedente nefasto sobre la jurisdicción de este Máximo Foro. No había razón alguna para certificar el caso criminal Pueblo v. Miguel Ocasio Santiago Núm. CG2021R00274 Rel: OPA 2021011403. Le corresponde al Tribunal de Primera Instancia atender la petición de divulgación a la prensa, según fue señalado por este mismo tribunal el pasado 6 de mayo. Si alguna parte quedara insatisfecha con lo que resolviera el Juez o Jueza asignado al asunto, esta tendría a su disposición los procesos de apelación.

## II

Como he expresado, el objetivo de promover el acceso de la ciudadanía a los procesos judiciales, fomentar la educación y la confianza en el sistema de justicia, y alcanzar la transparencia óptima de los procedimientos es y seguirá siendo una prioridad para mí. Ex Parte Televicentro of Puerto Rico, LLC, 195 DPR 18, 26 (2016). Desde que ejerzo mis funciones en este Tribunal hace 7 años **no ha habido una instancia en la que haya votado en contra del acceso a la prensa** a los procesos judiciales. Véase In re: Enmiendas al Reglamento del PECAM, 193 DPR 475, 513(2015); Telenoticias, Telemundo de PR II, 195 DPR 507,513 (2016). Al contrario, siempre he favorecido la apertura, la transparencia y la protección del derecho de la prensa y de los ciudadanos en general a tener acceso a la información pública, como un derecho fundamental de estirpe constitucional. Soto v. Srio. de Justicia, 112 DPR 477 (1982); Bhatia Gautier v. Gobernador, 199 DPR 59, 110 (2017). Insisto: el Poder Judicial no puede estar ajeno a los reclamos de mayor transparencia. Por eso, ante la reiteración de la solicitud, entregaría las grabaciones **ya**.

En nuestra democracia, el Pueblo tiene derecho a pasar juicio fiscalizador sobre todas las acciones y determinaciones del Gobierno, lo cual incluye las del Poder Judicial. Engineering Services International, Inc. v. Autoridad de Energía Eléctrica, 2020 TSPR 103; Ortiz v. Dir. Adm. de los Tribunales, 152 DPR 161, 183 (2000). Además,

contrario a lo que interpretó erróneamente una Mayoría de este Tribunal el pasado 6 de mayo, <u>los peticionarios no están solicitando que se divulguen **todos** los expedientes de los casos de Ley Núm. 54 en poder de los tribunales</u>. Piden uno: el de una mujer que reclamó sin éxito protección en contra de su agresor y en donde se alega que el Poder Judicial le falló.

Sobre el particular, a tono con los objetivos de la Ley Núm. 54 de 15 de agosto de 1989, 8 LPRA sec. 601 <u>et seq.</u>, según enmendada, el Artículo 5.005 de la Ley de la Judicatura, Ley Núm. 201-2003, 4 LPRA sec. 25e, dispone que los casos de violencia doméstica a tenor de la Ley Núm. 54, <u>supra</u>:

> [S]e verán en una sala especialmente designada para los mismos en cada Región Judicial. Esta sala **será de acceso controlado al público para <u>salvaguardar la identidad de la víctima</u>**, y será a discreción del Juez que preside la sala especializada determinar qué personas del público pueden acceder a la misma. (Énfasis suplido).

El texto de la ley es diáfano y permite colegir que el principio detrás de estas salvaguardas **<u>es proteger la identidad</u>** de las víctimas que acuden en búsqueda de auxilio a nuestros tribunales. Lamentablemente, el nombre de Andrea ya es --y será-- conocido por un País que languidece ante un sentido de impotencia y desasosiego. No queda identidad que proteger. La Mayoría del Tribunal cubre con un manto de confidencialidad el proceso judicial que se dio en este caso al amparo de las disposiciones de la Ley Núm. 54, <u>supra</u>. El estatuto en nada dispone sobre mantener en privado o en secreto los testimonios que se vierten en sala. En ninguna

parte de los estatutos concernidos se hace referencia a que los procedimientos celebrados y terminados quedan totalmente excluidos, para la posteridad, de toda solicitud de acceso por parte de la ciudadanía. Nuestra responsabilidad como garantes de los derechos de las víctimas en tales circunstancias nos permiten tomar aquellas protecciones necesarias, sin incumplir injustificadamente con nuestro mandato constitucional para hacer accesible la información pública. Estas providencias están disponibles **si las circunstancias específicas del caso así lo requirieran**. Por ello, queda en la discreción del Juez que preside la sala especializada determinar qué personas del público pueden acceder a las grabaciones en controversia, así como, de determinar su procedencia, la forma en que estas serán compartidas.

En este caso nadie, se reitera nadie, invoca protección alguna u objeta la divulgación. Por el contrario, estamos en una de esas raras instancias en las cuales todas las partes concernidas están en la misma línea: a favor de divulgar y de la transparencia. Debió pesar en la mayoría la expresión bajo juramento de una madre que nos implora que se divulguen las grabaciones. Nótese que en este caso la orden del Tribunal de Primera Instancia solamente iba dirigida a la Fiscalía, quien tiene en su poder las grabaciones. No cabe duda de que no nos encontramos ante una situación en la cual se justifique la limitación del derecho del público y la prensa a tener acceso a las grabaciones sobre estos

procedimientos judiciales. <u>Bhatia Gautier v. Gobernador</u>, *supra*. Si bien existen circunstancias y situaciones que en nuestro ordenamiento se establece que ameritan limitar el acceso público a los procedimientos judiciales, como ocurre en los casos de familia y menores, en este caso no están presentes.

¿Que se pretende esconder? La norma general es que los procesos judiciales son públicos y --a menos que exista un interés apremiante del Estado-- se toman las providencias para limitar ese acceso. En este caso, como en todos lo casos similares que refleja la jurisprudencia, <u>la balanza se inclina hacia el acceso y la transparencia</u>. No hay razón para que en este caso aplique una norma en blanco de confidencialidad.

Por eso, las grabaciones tienen que hacerse públicas. El País y la familia de Andrea así lo claman. Como indiqué, ellos deben escucharlas primero y expresar si objetan que se divulgue algún fragmento pues la dignidad de Andrea y su memoria no termina con su muerte.[1] Luego, le toca el turno de escucharlas al País. Es imperativo hacerlo. No hay nada que esconder.


Maite D. Oronoz Rodríguez
Jueza Presidenta

---

[1] "La dignidad del ser humano prevalece aun después de la muerte." Dora Nevares-Muñiz, "Deliberación en bioderecho", Revista Lumen núm. 9 (2013), 132; Fred O. Smith, Jr., <u>The Constitution After Death</u>, 120 Colum. L. Rev. 1471, 1499 (2020).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

<table>
<tr><td>El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Miguel Ocasio Santiago<br><br>Recurrido</td><td>CT-2021-0008</td><td></td></tr>
</table>

Opinión disidente emitida por el Juez Asociado señor ESTRELLA MARTÍNEZ

En San Juan, Puerto Rico, a 10 de mayo de 2021.

La acción ejecutada por parte de una Mayoría de este Tribunal es errada en derecho, lamentable como cuestión de política pública de acceso a la información y atropella irrazonablemente a los compañeros de estrado disidentes, pero, más grave aún, insensible a la familia de Andrea Ruiz Costas y a los peticionarios.

**Hoy se está revictimizando a una familia que mediante declaración jurada se hace eco del reclamo de transparencia y accesibilidad que, como cuestión de derecho, debimos reconocer. Los familiares de los fallecidos por el crimen también son víctimas de los delitos. El silencio, la desinformación, la desconfianza y las cerradas de puertas insensibles también los revictimizan.**

Tal como expliqué en mi pasado Voto Disidente, nuestro ordenamiento cuenta con las herramientas necesarias para

proteger la dignidad y los derechos individuales de las víctimas de delito y otros actores de los procesos judiciales. Véase *In re Overseas Press Club*, MC-2021-0059 (Voto Particular Disidente Juez Asociado señor Estrella Martínez.) Sin embargo, estamos ante una situación muy particular en la que estoy convencido de que la dignidad e intimidad de Andrea no se protegen denegando de plano la información solicitada. También estoy convencido que el interés público va de la mano con los reclamos de transparencia y acceso a la información de la familia de Andrea. En un caso en que lamentablemente la víctima falleció, me parece totalmente errado que se levante la bandera de revictimizarla o de que la divulgación tenga un efecto disuasivo para otras potenciales víctimas realizar reclamos ante el Tribunal, máxime ante el testimonio que dejó en vida Andrea para cuestionar los procesos y levantar su voz de alerta a la sociedad en general. Respetuosamente considero que la denegatoria de plano de estas solicitudes, que hoy se agrava con este apresurado proceder, lleva un mensaje de frustración y es mucho más lesivo que la divulgación de la información solicitada.

A pesar de que una Mayoría de este Tribunal adujo en la pasada denegatoria que este no era el foro adecuado para dilucidar en primera instancia la solicitud que nos ocupa, hoy paradójicamente se le quita al Tribunal de Primera Instancia el caso para denegarla de plano. Como agravante, se realiza esta acción sin escuchar la grabación, sin darle

oportunidad a las partes que se expresen y de una forma apresurada.

La violencia de género está enmarcada, entre otros múltiples factores, en la utilización atropellante del poder, la secretividad, no reconocerle derechos a su víctima y, peor aún, en ocasiones disfrazado con frases como: "porque es por su bien" y "por su bienestar".

Lamentablemente, las instituciones también tienen la atroz capacidad de repetir y fomentar esos patrones, con sus acciones y omisiones. Este Tribunal conoce que todas sus acciones y expresiones tienen un efecto social que va más allá de los casos y controversias que adjudica.

**La voz de Andrea fue silenciada. El reclamo de la prensa fue ignorado. Y hoy el reclamo de la familia de Andrea fue abruptamente rechazado, sin ser escuchados, sin ser atendidos, sin concederle tiempo razonable a nadie.** ¿Cuál es la prisa? Evidentemente, la certificación del caso no es producto de un análisis ponderado para otorgar un remedio adecuado, completo y oportuno, tal como lo he favorecido en el pasado. ¿Por qué reproducir la conducta apresurada que precisamente es objeto de cuestionamiento público desde que Andrea solicitó la orden de protección? ¿Por qué ejercer el poder mayoritario sin escuchar a nadie y sin permitir a los disidentes expresarse en un periodo de tiempo razonable? Estas preguntas se unen a las muchas que tiene la familia de Andrea y el Pueblo en general. Las salas especializadas de violencia de género fueron

concebidas primordialmente para atender de forma integral las necesidades de las víctimas. Ciertamente, el ordenamiento provee brindarles la intimidad y privacidad que sea necesaria para que puedan canalizar adecuadamente su reclamo. Eso no cambiará para las potenciales víctimas, pero no puede ser una excusa para denegar de plano el reclamo que nos ocupa. Ello, ante las particularidades del lamentable fallecimiento de Andrea, la voluntad de divulgación de los familiares, la trayectoria de publicidad de vistas judiciales que tenía este Tribunal, el apremiante interés público y el derecho de acceso a la información.

Por los fundamentos enunciados, disiento del curso de acción seguido por una Mayoría de este Tribunal y, consecuentemente, ordenaría la divulgación de lo solicitado.


Luis F. Estrella Martínez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

v.

Miguel Ocasio Santiago

    Recurrido

CT-2021-008

Opinión Disidente emitida por el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico a 10 de mayo de 2021.

**Andrea, hoy te volvimos a fallar. Y, al fallarte a ti, le fallamos al País.**

En la mañana de hoy, una mayoría de este Tribunal -- de la forma más atropellada posible; removiendo *motu proprio* una petición que se encuentra ante la consideración del Tribunal de Primera Instancia, y sin el beneficio de escuchar ciertos audios para determinar qué de lo contenido en ellos podía estar sujeto a diseminación pública y qué no -- le ha cerrado las puertas al reclamo de tus padres. Con ello, mantiene en estricta confidencialidad el contenido de determinados procesos judiciales celebrados en la Región Judicial de Caguas, los días 25, 26 y 31 de marzo de 2021, en los que tú figuraste como parte.

¿Para proteger a quién? ¿A ti? Lo dudo, pues tus padres comparecieron ante el Tribunal de Primera Instancia a informarnos que la mejor manera de proteger tu memoria era haciendo público lo sucedido en los referidos procesos judiciales.

¿Para proteger a las futuras víctimas de violencia de género? No lo creo, pues éstos y éstas se protegen brindándole un sistema de justicia transparente en el que puedan confiar. Un sistema de justicia que sepa rendir cuentas.

Entonces, nos volvemos a preguntar: ¿Para proteger a quién? ¿A los jueces y las juezas?

**Los jueces y las juezas no tenemos ni más, ni menos, derechos constitucionales que los demás puertorriqueños y puertorriqueñas. Tenemos los mismos. Todos y todas somos iguales. Y, como iguales, <u>en situaciones tan particulares como éstas</u>, tanto nuestras actuaciones -- como las actuaciones del resto de la sociedad que, día a día, desde nuestros estrados juzgamos -- tienen que estar sujetas a ser escudriñadas y evaluadas por el resto del País. Eso es un derecho constitucional que -- en el desempeño de nuestras funciones -- el Pueblo puertorriqueño, al convocarse y redactar nuestra Constitución, se reservó para ellos y ellas; y en gran parte, tal derecho se nutre de que éstos y éstas puedan tener acceso a la información pública en manos del Estado. Lo anterior, con las debidas salvaguardas en aquellos casos que así lo ameriten.** Véase, de manera análoga, lo expresado por quien suscribe en *Bhatia Gautier v. Gobernador*, 199 DPR 59, 176 (2017) (Colón Pérez, opinión disidente).

Siendo ello así, y siguiendo los parámetros expuestos en nuestro Voto Particular Disidente en *Ex parte: Overseas Press*

*Club de Puerto Rico*, 2021 TSPR 62, 206 DPR _____ (2021)(Colón Pérez, Voto Particular Disidente), somos de la opinión que las grabaciones de las vistas judiciales celebradas en la Región Judicial de Caguas los días 25, 26 y 31 de marzo de 2021, a las que previamente hemos hecho referencia, tenían que ser entregadas a los familiares de Andrea y a los gremios de periodistas (*Overseas Press Club* y ASSPRO) que las han solicitado. Lamentablemente, no fue así. El manto de secreto absoluto se impuso.

Como bien señaló el prestigioso académico, Dr. Efrén Rivera Ramos, en una reciente columna de opinión que le publicara el periódico El Nuevo Día, en la que evaluaba el proceder de este Tribunal en el caso que dio origen al recurso de reconsideración que hoy atendemos, **"ese manto de secreto absoluto será peor a la larga que el mal que la mayoría pretende evitar"**.

Ángel Colón Pérez
Juez Asociado
